Steve YOUNG *v.* Britt RICE and the City of Little Rock

91-194                                    826 S.W.2d 252

Supreme Court of Arkansas
Opinion delivered March 9, 1992

*Robert A. Newcomb*, for appellant.

*Edward G. Adcock*, Asst. City Att'y, for appellee.

DONALD L. CORBIN, Justice. Appellant, Steve Young, appeals an order of the Pulaski County Circuit Court, denying his request for access to certain information concerning the December 1990 promotions to lieutenant in the Little Rock Police Department. We have jurisdiction of this appeal because it requires the interpretation of the Arkansas Freedom of Information Act, specifically Ark. Code Ann. § 25-19-105(b)(10) (Supp. 1991). The issue is whether the requested information is a personnel record that is exempt from disclosure under the FOIA because its release would constitute a clear unwarranted invasion of personal privacy. The trial court concluded that it was such an invasion. We affirm.

A brief discussion of the department's lieutenant promotion examination is helpful in understanding this case. Two employees of the city's personnel office testified that this examination has two components, a written examination and an assessment center evaluation. The assessment center portion of the test is a procedure where out-of-state police officers, equal to the rank of

lieutenant or higher, observe the promotion candidates in three situations which are representative of the requirements of the job of a lieutenant. The first phase of the assessment center evaluation, the "in-basket" phase, is a test of the candidate's ability to respond in writing to typical demands of a lieutenant. In the second phase, the "coaching and counseling" phase, the candidate plays the role of a lieutenant and advises a subordinate, played by the assessor, who has a performance problem. In the third phase, the "leaderless group discussion," the assessors observe the interaction of four or five candidates who are given a scenario and asked to make recommendations thereon to the chief. The second and third phases of the assessment center evaluation are taped. In all three phases, the assessors observe the candidates' behavior, take notes, and summarize their observations in an "assessor report form" which each assessor prepares for each candidate. In the assessor report form, the assessor rates the candidate on a five-point scale, with one representing poor performance and five representing outstanding performance, in eleven competency categories. The assessor then gives a written summarization of the candidates' behavior in each of the eleven competency categories.

In January 1991, appellant made two FOIA requests of the city's personnel office concerning records from the lieutenant promotion examination. Specifically, appellant requested all records pertaining to the assessment center evaluation portion of the lieutenant examination conducted on December 13, and 14, 1990. Appellant also requested any correspondence concerning the examination between the personnel office and any other agency. The city responded to the requests by stating that it would release the requested information only as it related to appellant; to release the requested information as it related to the other candidates would be an unwarranted invasion of their privacy. The city offered to release the assessor report form for each candidate with the respective names of the candidates deleted. The city also informed appellant that there was no correspondence between the personnel office and any other agency.

Dissatisfied with the city's response to his request, appellant filed a complaint in circuit court asking that he be allowed to inspect and copy the requested record to determine if there had been a manifest error in the grading of the assessment center

portion of the lieutenant test. After a bench trial, the trial judge entered its order identifying these records as personnel records and stating that "[a]fter an in camera inspection of the materials generated during the assessment phase of the promotion examination, the Court finds that to produce these materials in association with the names of the individuals would be a clear unwarranted invasion of privacy." The trial court further found that the right of public scrutiny would be satisfied by the release of the assessor report forms with the names of the candidates deleted but with the names of the assessors intact.

On appeal, we do not set aside the trial court's findings unless they are clearly erroneous. ARCP Rule 52(a). The trial judge carefully considered the evidence and concluded that the release of the requested information would constitute a clearly unwarranted invasion of privacy. We cannot say this conclusion was clearly erroneous.

Under our FOIA, records kept in the scope of public employment are presumed to be public records. Ark. Code Ann. § 25-19-103(1) (1987). However, even if a record is considered to be a public record, it may be exempt from disclosure under the FOIA or some other statute. Section 25-19-105 provides specific exemptions from disclosure. Any exemption from disclosure is to be narrowly construed. *Legislative Joint Auditing Comm.* v. *Woosley*, 291 Ark. 89, 722 S.W.2d 581 (1987). When the scope of an exemption is unclear or ambiguous, we interpret it in a manner that favors disclosure. *Ragland* v. *Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986). There is no dispute over the fact that the records requested in this case are public records. Thus, appellee, as the keeper of the requested records, has the burden of proving the records are exempt from disclosure. We conclude appellee has met its burden.

From the first time appellant made his FOIA requests, appellee has maintained that the requested records are exempt from disclosure under section 25-19-105(b)(10). That section states that:

> (b)   It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:

. . . .

    (10)   Personnel records to the extent that disclosure would constitute clearly unwarranted invasion of personal privacy.

We note that section 25-19-105(c)(1), the exemption for employee evaluation or job performance records, is not applicable here because there was no suspension or termination involved.

In support of its position that the requested records are personnel records which, if disclosed, would constitute a clear unwarranted invasion of personal privacy, appellee offered the testimony of Betty Demory, a city employee in charge of the assessment center. She was qualified as an expert in the field of testing and measurement and testified to the procedure for the assessment center portion of the lieutenant's examination. She described the assessment center portion of the examination as follows:

> During the assessment center it is a very stressful time. A person's possible promotion can be riding on this, plus the candidates are very nervous. It is hard for them getting in that situation when they have especially the coaching and counseling session where we have a role-player playing the role of the sergeant, and they are trying to coach and counsel this person with the performance problems. I mean some of the behaviors that are exhibited, if it was disclosed could be embarrassing or humiliating to some of the candidates.
>
>     . . . .
>
> Candidates under stress react in a lot of different ways. They stutter and stammer. Their voice quivers. They turn — in some instances very red in the face. They may lose their train of thought. They may be shuffling their papers in front of them. They could lose control completely, start shouting or pounding on the table, cases of where they are so nervous that their hands are shaking the actual table during this coaching and counseling session. They — especially voices quivering, things like that. And these are things that are noted in the assessor's notes that I feel would be humiliating or could cause possible embar-

rassment to the candidates if everyone was able to listen to those tapes or read the assessor's notes.

The fact that section 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. The public's interest, the right to know that its safety is protected by competent and the best-qualified police lieutenants, is substantial. Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.

However, when applying federal FOIA privacy exemptions, the federal courts have found that a substantial privacy interest exists in records revealing the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. *Brown* v. *FBI*, 658 F.2d 71 (2d Cir. 1981). While we recognize that the federal FOIA personnel exemption is not identical to ours, we find the federal courts' balancing of the two competing interests to be persuasive. *See Department of Air Force* v. *Rose*, 425 U.S. 352 (1976). Although the *Brown* case speaks in terms of the release of information such as marital status, paternity, medical conditions, and alcoholic consumption, we conclude the release of these embarrassing behaviors also touches on the intimate details of the candidates' lives. Therefore, a substantial personal privacy interest is at stake here.

It is quite possible that the release of these records could subject the candidates to embarrassment and could perhaps threaten their future employment. To release these records would therefore result in a clearly unwarranted invasion of the candidates' personal privacy. We reach this conclusion in part because, although the public's interest is also a substantial interest, it is served by the release of the assessor report forms, even though the candidates' identities remain unknown. The public's right to scrutinize the lieutenant examination and decision making process is not ignored. Both the public policy behind the FOIA and

the individual's right to privacy are protected by the trial court's order. We cannot say the order was clearly erroneous.

Affirmed.

NEWBERN, J., not participating.