Mr. Fernell Neal c/o Department of Community Punishment Two Union National Plaza 105 W. Capitol Street Little Rock, AR 72201
Dear Mr. Neal:
You have requested an Attorney General opinion, pursuant to A.C.A. §25-19-105(c)(3)(B), a section of the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 through -109), concerning the release to the Arkansas Democrat Gazette of what you characterize as your "employee personnel file." You report that you were terminated from undesignated employment with the Arkansas Department of Community Punishment on June 28, 2001, and you oppose the release and possible publication of the requested information.
By law, I am directed to opine whether the custodian's decision on release of the requested records is consistent with the FOIA. A.C.A. §25-19-105(c)(3)(B). You have not indicated whether the custodian of the records intends to release them for review, nor have you provided me with a copy of the records themselves. In the absence of this information, I obviously cannot opine definitively regarding the records' release. However, I can and will set forth the tests the custodian should apply in determining whether to release all or part of the requested information.
Records that fall within the description "employee personnel file" will likely comprise either "personnel records" or "employee evaluation/job performance records," within the meaning of the FOIA. It will be important for the custodian of the records to classify the records correctly because the standards releasing these two types of records differ. I will set forth those standards below:
Personnel Records
Under the FOIA, "personnel records" must be released unless the release of such records would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12). The FOIA does not define the term "personnel records." Whether a particular record constitutes a "personnel record" within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that "personnel records" are all records, other than employee evaluation/job performance records, that pertain to individual employees, former employees, or job applicants. See, e.g., Ark. Op. Att'y Gen. No. 99-147, citing Watkins, The Arkansas Freedom of Information Act
(m m Press, 3rd ed. 1998), at 134.
As noted above, if the requested records in fact qualify as "personnel records," the question becomes whether their release would constitute a clearly unwarranted invasion of the personal privacy of the employee. The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping them private. See Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy."
Employee Evaluation/Job Performance Records
Under the FOIA, "employee evaluation/job performance records" are releasable only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
The FOIA does not define the phrase "employee evaluation or job performance record," nor have the courts construed the phrase. The Attorney General has consistently taken the general position that records relating to an employee's performance or lack of performance on the job are properly classified as job performance records under the FOIA. See,e.g., Ark. Ops. Att'y Gen. Nos. 2001-145; 96-132; 91-324. Formal, written employee evaluations of course fall into this category. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ops. Att'y Gen. Nos. 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
If any of the records that have been requested are, in fact, employee evaluations or job performance records, the custodian must apply the above-stated three part standard.
The question of whether there has been a final administrative resolution of a termination or suspension and the question of whether the requested records formed a basis for that termination or suspension are clearly ones of fact that the custodian should readily be able to answer. If he answers them in the affirmative, and if he further determines that there is compelling public interest in disclosing the records, he should produce them for inspection and photocopying.
The FOIA at no point defines the phrase "compelling public interest." However, Professor Watkins has provided some guidelines for making the factual determination whether such an interest exists. He states, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Watkins, supra at 146. He further observes: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. Elaborating on this point, Watkins remarks: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 147. Professor Watkins additionally notes that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 146-47 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
The custodian must evaluate each of the records that have been requested under the foregoing principles to determine whether they contain information that would render them subject to the exemptions for personnel records or for employee evaluation/job performance records.
If the custodian decides to release a particular record under one of the above standards, he should further review the particular document to determine whether it contains specific information that is exempt from disclosure under any of various other exemptions. If so, this information should be redacted from the record prior to its release. For example, if the record contains social security numbers, they should be redacted.See, e.g., Op. Att'y Gen. No. 99-011, citing 5 U.S.C. § 522a (the "Federal Privacy Act"). Similarly, unlisted telephone numbers should be redacted. See, e.g., Op. Att'y Gen. No. 99-054. In addition, A.C.A. §25-19-103(a)(13) prohibits the disclosure of the home address of a non-elected state employee — a category into which you clearly fall. More generally, where the facts indicate that a particular individual has a heightened privacy interest, the home address and listed telephone number should be redacted as well. See Stilley v. McBride, 332 Ark. 306,965 S.W.2d 125 (1998); Ops. Att'y Gen. Nos. 2001-123; 99-054. Some records may further contain references to other employees, in which case the custodian will need to determine whether these references are independently exempt from disclosure as personnel records or employee evaluation/job performance records of the referenced co-workers. Any review of such references should proceed under the applicable tests set forth above.
Finally, records that are otherwise releasable may be withheld from release if they contain information in which an individual has a constitutional privacy interest. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. If the custodian of the records determines factually that any information in the requested records meets the three prongs of test laid out by theMcCambridge court, he must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs any privacy interest in their non-disclosure. Again, this determination will be a factual one, based upon the information available to the custodian.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh