The Honorable Brenda Gullett State Senator #28 Longmeadow Pine Bluff, AR 71603
Dear Senator Gullett:
You have requested my opinion on the issues raised by the following questions:
 (1) Can a municipal civil service commission interview applicants for the position of police officer or firefighter in executive session?
(2) Are the applications of these interviewees public record?
 (3) Are the score sheets which contain the names of all interviewees and how they are scored by the commissioners public record?
RESPONSE
Question 1 — Can a municipal civil service commission interviewapplicants for the position of police officer or firefighter in executivesession?
It is my opinion, as explained more fully below, that the answer to this question will depend upon whether the applicants are internal or external applicants. That is, the answer will depend upon whether the applicants are already employees or not. The Commission cannot interview external applicants for these positions in executive session. However, it can interview internal applicants for these positions in executive session if the job change for the internal applicant would constitute either a promotion or a demotion.
You indicate that the local civil service rules provide that the interview in question is an oral examination, in which the applicants are asked a pre-determined set of purchased test questions, in order to judge their oral communication skills, general knowledge, and reasons they are applying for the position. You also state that this is the last stage in the application process and one at which the candidates may also be questioned concerning information contained in their background checks and concerning information included in their application forms.
This issue is governed by A.C.A. § 25-19-106(c)(1), which states:
 (c)(1) Executive sessions will be permitted only for the purpose of considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee. The specific purpose of the executive session shall be announced in public before going into executive session.
 (2)(A) Only the person holding the top administrative position in the public agency, department, or office involved, the immediate supervisor of the employee involved, and the employee may be present at the executive session when so requested by the governing body, board, commission, or other public body holding the executive session.
 (B) Any person being interviewed for the top administrative position in the public agency, department, or office involved may be present at the executive session when so requested by the governing board, commission, or other public body holding the executive session.
A.C.A. § 25-19-106(c).
The above-quoted section of the Freedom of Information Act specifically limits the purposes for which executive sessions may be held. Executive sessions are permitted for the purpose of interviewing candidates for the top administrative position in the department. (I am assuming from the wording of your question that the interviews about which you have inquired are not for top administrative positions.) Executive sessions are also permitted for the purpose of discussing promotions or demotions of persons who are already employees, and such employees are permitted to attend such executive sessions. Accordingly, I must conclude that under the authority of section (c)(2)(A) above, the Commission may interview internal applicants for the positions of police officer and firefighter in executive session if the job change would constitute a promotion or demotion of the applicant, but the Commission may not interview external applicants in executive session. Interviews of external applicants must be held publicly, in compliance with the FOIA. Such interviews do not fall within any of the stated purposes for which executive are permissible. I realize that this disparate treatment of internal and external applicants seems unfair. The appropriate remedy must be sought with the legislature.
The prospect of public interviews of this nature raises a troubling issue. As you describe the interview sessions in question, they appear to involve discussion of some matters that if contained in a record, could be kept private under other exemptions from disclosure. For example, some information that is contained in background reports may be confidential under the laws that govern the Arkansas Crime Information Center. See
A.C.A. § 12-12-211. Other information that may be discussed, such as test scores, for example, may be exempt from disclosure in the form of a record, under the exemptions that are stated in the FOIA itself. See,e.g., Op. Att'y Gen. No. 2001-172. The FOIA does not contain a similar exemption for the discussion of such matters.
I have previously opined that if a meeting that is required to be held publicly will involve discussion of matters that are required by law to be kept confidential, the meeting must be held in a manner that will preclude revealing any confidential information. For example, in Opinion No. 2001-040, I addressed the fact that the Arkansas Board of Review must hold its meetings publicly, but also must discuss matters concerning unemployment claims that are required by law to be kept confidential, pursuant to A.C.A. §§ 11-10-106(d) and -314. I concluded that the meeting must be conducted publicly, but that this would be possible without violating the confidentiality requirements if the board members were careful not to reveal names and other matters that were required to be kept confidential. I suggested, for example, that confidential names of claimants, employers, and claims could be referred to by number. I acknowledged in that opinion that such a procedure could prove to be burdensome, but that the remedy for that burden must be legislative.
I believe that the same reasoning applies to the interviews about which you have inquired. If these interviews will involve the discussion of information that is required by law to be kept private, the board must nevertheless meet publicly as required by the FOIA, but it must find a way to conduct the interviews that will not divulge such information.
In this regard, I note another troubling aspect of the situation about which you have inquired that may be more difficult to resolve. The interviews, as you have described them, actually constitute examinations that test various skills of the applicants. Tape recordings of similar exercises were held in Young v. Rice, 308 Ark. 593, 826 S.W.2d 252
(1992), to be exempt from disclosure under A.C.A. § 25-19-105(b)(12) (which states an exemption for personnel records under limited circumstances). Moreover, because these examinations are held publicly, the test scores (which, as noted above, I have opined should not be disclosed) may be readily determinable by the public.
The solution to the difficulties posed by conducting these interviews publicly, as required by law, can be resolved in one of two ways. Either the legislature must amend the Freedom of Information Act to provide that interviews/examinations of this nature can be held in executive session,[1] or the Commission must change its policy concerning the administration of these examinations, opting instead for the examination to be administered by a third party.
Question 2 — Are the applications of these interviewees public records?
Yes. The term "public record" is defined in the Freedom of Information Act as follows:
 (5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A).
My predecessors and I have consistently opined that the above-quoted definition of "public records" applies to the job applications of both successful and unsuccessful job applicants. See, e.g., Ops. Att'y Gen. Nos. 98-102; 96-190; 95-291; 95-113; 93-263; 93-114; 90-248. Any exempt items of information that may be contained in such records must, of course, be redacted prior to their release to the public.
Question 3 — Are the score sheets which contain the names of allinterviewees and how they are scored by the commissioners publicrecord?
It is my opinion that score sheets containing the names of all interviewees and their scores, although "public records," within the meaning of the Freedom of Information Act, cannot be disclosed without redacting the names of the interviewees. Moreover, if the public could determine the names of the applicants and their scores from a listing of the scores without the names, the entire list should not be disclosed. As noted previously, my predecessors and I have consistently opined that test scores cannot be released if, from a listing of the scores alone, the public can determine the individuals who made the scores. See, e.g.,
Ops. Att'y Gen. Nos. 2001-172; 2000-226; 2000-119; 99-016; 99-002; 97-177; 97-034; 97-033; 93-079; 89-054.
The reasoning underlying this position has been stated as follows:
 [T]he public has a valid interest in knowing whether public employees possess a requisite level of skill to perform their duties. . . . The public's interest in public employees' training and performance does not, however, extend to the actual performance by each individual public employee unless a particular employee fails to perform his or her duties properly. . . . Information indicating specific scores is not necessary in order to satisfy the public's interest in this matter. Moreover, specific score information is sufficiently private that its disclosure could subject the affected individuals to embarrassment or could affect future employment.
Op. Att'y Gen. No. 97-033 at 4.
I concur with this reasoning and therefore conclude that the interviewees' names must be redacted from the listing of test scores. Moreover, if the public can determine from the score listing which individuals received which scores, the entire score sheet should not be released.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] I note that the legislature recently amended the Freedom of Information Act to provide that boards and commissions are not required to meet publicly when administering examinations for licensure. A.C.A. §25-19-105(c)(5)(B). A similar provision would be necessary in order for municipal civil service commissions to interview applicants for employment in executive session.