Brooks Gill, Esq. Dumas City Attorney 135 W. Waterman Street Dumas, AR 71639
Dear Mr. Gill:
I am writing in response to your request for my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), regarding the release of certain records under the Freedom of Information Act (FOIA), A.C.A. §§ 25-19-101 through -109. Specifically, you have asked for my opinion regarding the release of certain documents in response to an FOIA request from the DumasClarion seeking "[i]nformation and documentation you may hold relating to sexual harassment claims and related issues" involving the mayor of Dumas, which is a city of the first class having a mayor/council form of government. You have provided me with a file that contains a letter from you to the Dumas Personnel Committee Chairman. The file further contains an unsigned affidavit from a city employee. You report having tentatively resolved to disclose these documents subject to the condition that you will redact the employee's name.
In my opinion, the records constitute the "personnel records" of both the mayor and the employee. As such, they are subject to a balancing test weighing the interest of the public in obtaining the records against the interests of the employees in avoiding disclosure. If the documents are reviewed solely under this test, I believe they should be disclosed subject to the condition that you redact the employee's name and other identifying information. There is some possibility that the records might also qualify as the employee's "evaluation/job performance records," although the facts as you have recited them suggest that this classification does not apply. In the unlikely event that it does, I believe the records should not be disclosed even though they might otherwise have been subject to disclosure as personnel records.
The FOIA provides for the disclosure upon request of certain "public records," which are statutorily defined as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A). Given that both the mayor and the city employee are public employees, I believe documents containing the requested information clearly qualify as "public records" under this definition.
Subsection 25-19-105(b)(12) of the Code exempts from disclosure "[p]ersonnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." The FOIA does not define the term "personnel records." However, this office has consistently taken the position that "personnel records" are all records, other than employee evaluation/job performance records (discussed below), that pertain to individual employees, former employees or successful job applicants. See, e.g., Ark. Ops. Att'y Gen. Nos.2000-130; 99-147, citing Watkins, The Arkansas Freedom of InformationAct (3d ed. 1998), at 134.
The FOIA likewise does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase and adopted a balancing test to determine if it applies, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. SeeYoung v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the custodian must disclose the personnel records. As the court noted in Young:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
However, as the court noted in Stilley v. McBride, 332 Ark. 306, 312,965 S.W.2d 125 (1998), when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employees' privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Id. at 313.
You suggest in your request that "my case file created in my capacity as city attorney does not constitute a `personnel record'" and that the exemption consequently could not apply. I must respectfully question this conclusion. The records you have supplied me were created following an oral report to you by the subject employee's supervisor regarding various alleged incidents involving the mayor. The records were created by and delivered to agents of the city, and they pertain exclusively to two individual officer/employees of the city. Under these circumstances, I believe they would probably qualify as personnel records of both employees unless they might alternatively be classified as employee evaluation/job performance records. See discussion below. I do not believe the mere fact that you created the documents in your capacity as city attorney dictates a contrary conclusion.
In applying the balancing test set forth in Young, I am guided by decisions of my predecessors concluding that allegations of sexual harassment by a highly placed official are of paramount public concern and outweigh an official's privacy interest in keeping such information out of the public eye. As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-237:
 This office has consistently opined that the public does have a compelling interest in the release of job performance records relating to sexual misconduct. See, e.g., Ops. Att'y Gen. Nos. 1999-361; 94-119; 93-356 (records containing allegations of sexual misconduct of school superintendent give rise to compelling public interest); 89-073 (job performance records relating to sexual misconduct of police officers gives rise to a compelling public interest).
 Moreover, I believe the fact that you have redacted the employee's name from the file — a decision I consider appropriate for reasons discussed below — should minimize any interest this employee might otherwise have had in keeping the information private.
A different test will apply if the file is deemed to constitute employee evaluation/job performance records. As I noted in Ark. Op. Att'y Gen. No. 2003-078:
 With regard to the separate exemption for "employee evaluation/job performance records," although the FOIA does not define this phrase, this office has previously opined that it encompasses, generally, records relating to an employee's performance or lack of performance on the job. See, e.g., Op. Att'y Gen. 2001-055. It includes, in my opinion, records that were generated as part of an investigation of allegations of the misconduct of an employee, and that detail incidents that gave rise to an allegation of misconduct. See, e.g., Op. Att'y Gen. 2001-063 (Internal Affairs file that was generated at the instance of the Department in the course of investigating a complaint against an employee constitutes "employee evaluation/job performance records" within the meaning of the FOIA).
Although the FOIA does not define the term "employee evaluation/job performance records," this office has consistently interpreted the term to refer to any records that were created by or at the behest of the employer, and that detail the employee's performance or lack of performance on the job. See, e.g., Ops. Att'y Gen. Nos. 2003-257; 2003-015; 2002-263; 2002-210; 2002-158; 2002-085; 2002-055; 2001-276; 2001-217; 2001-153; 2001-144. As my predecessor noted in Ark. Op. Att'y Gen. No. 99-339:
 This exemption is limited to records created by or at the behest of the public employer. This conclusion is consistent with previous opinions involving sexual harassment allegations. See, e.g., Op. Att'y Gen. 98-001 (documents received from third parties and not created by the employer as a part of an investigation are not "employee evaluation or job performance records, but might be classified as" personnel records"); Op. Att'y Gen. 96-342 (records not made or given as part of the employing agency's inquiry or investigation are not "job performance records" and are generally subject to disclosure absent the presence of "intimate information" that might give rise to a privacy interest); and Op. Att'y Gen. 96-257 (same). See also Op. Att'y Gen. 99-026 (agreeing with my predecessor's conclusion that documents may be classified as "employee evaluation or job performance records if they were created in the evaluation of the employee's performance"). Documents not created in the evaluation process do not come within the rationale behind the § 25-19-105(c)(1) exemption. That exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See
WATKINS, The Arkansas Freedom of Information Act (mm Press, 3d ed. 1994) at 141-142.
It is a question of fact whether requested documents were created in the course of such an investigative inquiry into an employee's performance on the job. See Ark. Ops. Att'y Gen. Nos. 2001-191 and 2001-184.
The standard for the release of "employee evaluation/job performance records" is set forth at A.C.A. § 25-19-105(c)(1). Specifically, such records are subject to disclosure only under the following three conditions:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Since no suspension or termination has reportedly resulted from the investigation, at least the second condition for disclosure has not been met in this case.
Under the facts as you have recited them, your file might arguably constitute an employee evaluation/job performance record of the employee but not of the mayor. In order to determine if it does, you must establish initially whether the documents at issue might be described as created at the behest of a supervisor for the purpose of reviewing the employee's performance on the job. In this regard, I will note that the employee reportedly recounted certain information to a supervisor, who in turn reported it to you, who subsequently created and delivered the documents to the Dumas Personnel Committee chairman. I am unaware whether you created the documents at the behest of and on behalf of the employee's supervisor, simply on your own initiative or at the request of the Committee. I am also unaware of whether the Committee functions in any supervisory capacity with regard to the employee in question. The documents appear to support the conclusion that you created them on your own initiative. However, as the person most closely acquainted with the underlying facts, you are best situated to determine whether these documents might be described as having been prepared at the behest of a supervisor in the course of an investigation. If so, the documents might qualify as the employee's evaluation/job performance records.
In my opinion, a similar conclusion would not apply with respect to the mayor, who operates beyond anyone's direct supervisory control.[1]
Moreover, precisely because the mayor is not subject to corrective actions based upon performance evaluations and because records relating to him could not have been created by or at the behest of a supervisor, the rationale for classifying records relating to his performance as exempt simply does not exist. As Professor Watkins observes:
 The exemption for evaluation records reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interests of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one important objective of the evaluation process — identification of weaknesses with an eye toward fostering improvement — by revealing an employee's deficiencies before he has an opportunity to correct them.
Watkins, supra at 141-42. No such policy basis for promoting candor exists when the subject of the evaluation is effectively insulated from any disciplinary repercussions. Moreover, as a necessary corollary of the mayor's independence, the conditions that would render a performance evaluation disclosable — namely, a suspension or termination based upon requested documents whose contents are of strong interest to the public — could never apply to documents detailing a mayor's performance.
To summarize, depending upon the facts, the documents contained in your file might be disclosable as the mayor's personnel records but not disclosable as the employee's evaluation/job performance records. If you find this to be the case under the standards recited above, the question arises whether the standard that dictates disclosure should trump the standard that dictates nondisclosure.
My predecessor addressed the converse of this issue in the following excerpt from Ark. Op. Att'y Gen. No. 2002-237:
 If the record should be withheld from disclosure under the standard for employee evaluation/job performance records, it must not be disclosed. If, on the other hand, it would be disclosable under the standard for employee evaluation/job performance records but non-disclosable under the standard for personnel records, the record should be disclosed with the private personnel information redacted.
In the present case, if you determine that the requested documents constitute both personnel records and employee evaluation/job performance records — a conclusion that seems unlikely given your description of the circumstances attending the records' creation — the records should be withheld under the standard for employee evaluation/job performance records but disclosed under the standard for personnel records. Under these circumstances, I believe the conclusion that the records should not be disclosed would control. In contrast to the situation discussed in Opinion No. 2002-237, which anticipated possibly releasing redacted personnel records of one employee that also constitute releasable evaluation/job performance records of another employee, I do not believe it is permissible to release a redacted employee evaluation/job performance record simply because the same document constitutes what would be a releasable personnel record of another employee.
I have reached this conclusion because the FOIA expressly contemplates releasing redacted excerpts of personnel records under appropriate circumstances, whereas it flatly prohibits releasing any portion of an employee evaluation/job performance record unless the three conditions discussed above apply. Specifically, A.C.A. § 25-19-105(b)(12) exempts from disclosure "[p]ersonnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." Implicit in this standard is a directive that personnel records might be released only in part if doing so avoids the "clearly unwarranted invasion of personal privacy." By contrast, A.C.A. § 25-19-105(c) provides that "all
employee evaluation or job performance records, including preliminary notes and other materials" (emphasis added) will be subject to disclosure only if the three conditions discussed above apply. In my opinion, this standard is simply inconsistent with the concept of issuing redacted employee evaluation/job performance records. Having ventured this opinion, I can only state again that this question would appear to be of purely academic interest in this case, since the documents you have provided likely do not qualify as employee evaluation/job performance records.
Alternatively, if you determine that the documents are not employee evaluation/job performance records but rather are personnel records, you will need to determine whether the employee has a sufficient privacy interest to warrant redacting the name based upon the Young balancing test discussed above. In this regard, I will note that the public's strong interest in disclosure of the documents would appear to hinge on the mayor's alleged conduct, not on the identity of the employee in question. In my opinion, this distinction might support redacting the employee's name, as well as any other information that might identify the employee, under the Young test.
Regardless of how you categorize the records, you should further consider whether redacting the employee's name and other identifying information from the records might be warranted on constitutional grounds. In Ark. Op. Att'y Gen. No. 93-356, my predecessor, in addressing an analogous issue, concluded that it was appropriate to redact an employee's name under certain facts that included allegations of sexual harassment. I have enclosed that opinion for your review.
Finally, I should note that although you have repeatedly redacted the employee's name in the copy of your file that you have supplied me, you appear to have inadvertently failed to do so in one instance on page three of your letter to the Dumas Personnel Committee chairman.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosure
[1] In a city of the first class with a mayor/council form of government, the only arguably disciplinary options available against a mayor are removal for "nonfeasance" in office, A.C.A. § 14-42-109, and for "vacation" of office, A.C.A. § 14-43-401. A mayor's prior felony conviction might further serve as a basis to seek his removal through a quo warranto proceeding, an action for usurpation of office or an illegal exaction lawsuit. See discussion of these options in Ark. Op. Att'y Gen. No. 2002-310. For a discussion of disciplinary options available against a mayor of an otherwise organized municipality, see Ark. Op. Att'y Gen. No. 99-137.