J.R. Howard, Executive Director Arkansas State Crime Laboratory #3 Natural Resources Drive Post Office Box 8500 Little Rock, AR 72215
Dear Mr. Howard:
I am writing in response to your request for my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), regarding the release of certain records under the Arkansas Freedom of Information Act ("FOIA"), A.C.A. §§ 25-19-101 through-109 (Repl. 2002 Supp. 2005). You have asked me to respond to your provisional decision, as the custodian of the records at issue in your request, to release for inspection to four of five candidates for the position of Assistant Supervisor of the Forensic Drug Section[1] various documents falling within the following requested categories generated in the course of interviewing candidates and making recommendations for the position:
1) copy of all questions
2) copy of all notes of interview
3) copy of applicant disposition forms
4) copy of recommendation memorandum
5) copy of documentation of scoring by individuals
6) copy of documentation of scoring by interviewers
The four requestors were all unsuccessful in their applications for the position in question. Unaccountably, the four candidates' request for this information is captioned "Promotion Packet to contain[.]" This caption may reflect the fact that all of the applicants for the position reportedly were employees of the Arkansas State Crime Laboratory seeking promotion.
You have provisionally determined to respond to this request as follows:
 I propose to comply with this request by releasing to each of the four individuals a copy of the recommendation memorandum and a copy of each interviewer's notes relating to a specific applicant. The interviewer's notes contain a list of all questions, all notes made by the interviewer, the applicant's individual scores, and documentation of scoring by interviewers.
The phrase "a specific applicant" in this description is somewhat ambiguous in that leaves it unclear whether you intend to provide each requestor with the interviewers' notes relating to all
applicants or whether you intend to provide each requestor only with the interviewers' notes relating to his or her own
application. In this regard, I note that the latter interpretation draws some support from the arrangement of the documents you have appended to your request. You have included immediately ahead of each unsuccessful applicant's records a copy of the "recommendation memorandum" referenced in your description, thereby suggesting that you intend to produce to each individual requestor only records relating to his own application. Otherwise the inclusion of multiple copies of the recommendation memorandum would have been unnecessary. Reinforcing this conclusion is the fact that none of the material you have provided for my review contains notes relating to the successful applicant, who was not one of the requestors. Had you intended to provide the requestors with all applicants' records, logic suggests you would have also appended the successful applicant's records.
With respect to the four unsuccessful candidates for the position, you have provided me with the scores assigned by each member of a five-member review committee to a list of 23 questions apparently posed to each candidate in the interview process. Some of the reviewers assigned not only scores but also included handwritten commentary on particular responses. You have further attached to the information relating to each applicant a copy of the interview committee's memorandum recommending that a particular applicant be hired. As noted above, you have supplied me with no documents relating to the successful candidate other than four copies of the memorandum proposing that she be hired. Again, I gather from these inclusions and omissions of documents that you intend to provide each of the four unsuccessful candidates only with the interview results relating to himself or herself.
I have further reviewed certain documents that you apparently do not intend to release to any of the requestors. Specifically, I have reviewed a document captioned "Responses from Interviews for Assistant Chief Forensic Chemist Position," which lists each candidate's average score on each of the 23 questions, the respective totals of these average scores and the average response score for each candidate overall. I have further reviewed a chart that reports the score on each of the 23 questions awarded by each interviewer for each of the candidates.
Based upon my review of the documents attached to your request for my opinion as well as the documents referenced in the previous paragraph, I believe that you should disclose to each of the requestors all of the referenced documents, including those referenced in the previous paragraph, redacting only the names of the unsuccessful candidates.[2] I further believe you should disclose to each of the requestors without redaction of any sort similar records relating to the interview of the successful candidate. In the present case, I believe no exemptions from disclosure apply other than a privacy exemption warranting redacting the names of the unsuccessful candidates.
With respect to records that reflect the names and interview scores of applicants for public employment, I offered the following analysis in Ark. Op. Att'y Gen. No. 2003-015:
 A record of this nature constitutes the "personnel record" of any individual referenced in the record who is already an employee of the department and of the applicant who is hired. Under the FOIA, "personnel records" must be released unless their release would constitute a "clearly unwarranted invasion of [the employee's] personal privacy." A.C.A. § 25-19-105(b)(12). This office has previously opined that the release of records reflecting employees' names and scores would constitute a clearly unwarranted invasion of personal privacy, and although in some instances it may be sufficient to redact the employees' names while disclosing a list of the scores, it is not sufficient to do so if, under the circumstances, the public could ascertain which applicants received particular scores simply from a listing of the scores. See Ops. Att'y Gen. Nos. 2002-161; 2001-172; 2000-226; 2000-119; 99-016; 99-002; 97-177; 97-034; 97-033; 93-079; 89-054.
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase and adopted a balancing test to determine if it applies, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593, 598, 826 S.W.2d 252
(1992). If the public's interest outweighs the individual's interest, the custodian must disclose the personnel records. As the court noted in Young:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
Id. However, as the court noted in Stilley v. McBride,332 Ark. 306, 312, 965 S.W.2d 125 (1998), when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employees' privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Id. at 313.
As noted in the above quoted excerpt from Opinion No. 2003-015, this office has opined on various occasions that disclosing test scores of public employees will not offend the FOIA if the disclosure does not betray the identity of any individual whose score is disclosed. As one of my predecessors opined in Ark. Op. Att'y Gen. No. 2002-161:
 [S]core sheets containing the names of all interviewees and their scores, although "public records," within the meaning of the Freedom of Information Act, cannot be disclosed without redacting the names of the interviewees. Moreover, if the public could determine the names of the applicants and their scores from a listing of the scores without the names, the entire list should not be disclosed. As noted previously, my predecessors and I have consistently opined that test scores cannot be released if, from a listing of the scores alone, the public can determine the individuals who made the scores. See, e.g., Ops. Att'y Gen. Nos. 2001-172; 2000-226; 2000-119; 1999-016; 1999-002; 1997-177; 1997-034; 1997-033; 1993-079; 1989-054.
In the present case, the paramount public interest would appear to be to establish that the most qualified applicant was actually hired. In my opinion, this public interest would be vindicated by producing the scoresheets of all applicants, redacting only the names of the unsuccessful applicants, whom I do not believe could be identified by reviewing the redacted scoresheets. I further believe you should produce the memorandum identifying the successful applicant, as well as her unredacted scoresheets. As I noted in Opinion No. 2005-086:
 I would describe as minimal, if there at all, the interest of a successful applicant in keeping his or her prevailing score undisclosed. In my opinion, this minimal interest in privacy will generally be outweighed by the public's interest in knowing whether the most qualified applicant was hired.[3]
Finally, I believe you should produce the document captioned "Responses from Interviews for Assistant Chief Forensic Chemist Position" and the chart reporting the scores on each of the 23 questions awarded by each interviewer for each of the candidates, redacting from these documents only the names of the unsuccessful applicants.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Despite your use of this title in your request, the memorandum recommending a particular applicant over the others refers to the position at issue as being "Assistant Chief Forensic Chemist." I am unable to account for this discrepancy.
[2] Although the unsuccessful candidates' request for records is a bit cryptic, I believe they individually intended to request the pertinent records relating to all applicants for the position, not merely their own individual records, unless some provision of the FOIA mandates withholding all or part of those records.
[3] In a footnote to this passage, I remarked:
 [T]he public interest in the disclosure of this information would appear to grow stronger with each unsuccessful candidate that the record might reveal was more qualified as reflected in interview scores. Although the successful candidate's privacy interest in nondisclosure might correspondingly increase with each unsuccessful candidate that the record revealed to be more qualified, I do not believe that interest would generally outweigh the public interest in disclosing which applicant was awarded the job.