Mr. Brent D. Houston Benton City Attorney Jensen Young Houston, PLLC 1230 Ferguson Drive Post Office Box 1500 Benton, Arkansas 72018
Dear Mr. Houston:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B)(i) (Supp. 2007), which is contained within the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. § 25-19-101 — 109 (Repl. 2002 and Supp. 2007), for my review of the decision by the City of Benton, as custodian of the records, to withhold from disclosure records relating to an internal investigation that resulted in the disciplining of an officer in the Benton Police Department. You have provided a copy of the FOIA request, which sought "the complete file . . . of the inquiry of the incident concerning" a superior officer who was disciplined as a result of the inquiry.[1]
As factual background, you report that a superior officer was accused of committing various infractions of city policy involving subordinate officers, and that an internal investigation occurred as a result of the accusations. The superior *Page 2 
officer was suspended as a result of the inquiry. My inquiries reveal that apparently no other officers were disciplined, but that one officer resigned following the investigation. You further report that the records in question contain factual information concerning the actions and conduct at issue, including times, dates, locations, names of individuals involved, and names of private citizens who were witnesses. You express your opinion, on behalf of the custodian, that the records are "personnel records" of the named individuals involved in the incidents, and that because of privacy concerns, the records should not be released based upon A.C.A. § 25-19-105(b)(12).
Subsection 25-19-105(c)(3)(B)(i) provides in pertinent part that "[e]ither the custodian, requester, or the subject of the records may immediately seek an opinion from the Attorney General, who, within three (3) working days of receipt of the request, shall issue an opinion stating whether the decision is consistent with this chapter."
RESPONSE
Although I have not seen the records in question, the facts related in your correspondence lead me to surmise that they were all generated as part of an investigation of accusations of employee misconduct, and that they detail incidents that gave rise to the accusations.[2] This office has previously opined on numerous occasions that records of investigations of employee misconduct are "employee evaluation or job performance records" under the FOIA, rather than "personnel records." The question in this particular instance may be somewhat complicated by the fact that the records may also be the "job performance," or possibly the "personnel records," of other employees named in the records. In my opinion, however, records detailing the incidents that gave rise to the accusations of misconduct on the part of the superior officer should be deemed the "employee evaluation/job performance records" of that officer, regardless of whether other employees are named such that these same records might also be viewed as the job performance, or possibly the personnel records, of those other employees. *Page 3 
Accordingly, your decision to withhold the investigation records based upon the "personnel records" exemption is in my opinion contrary to the FOIA. Because the records constitute "evaluation or job performance records" of the superior officer, they must be evaluated under the separate test applicable to such records. Assuming the records formed the basis to suspend that officer, and further assuming that the officer does not intend to appeal such suspension,[3] then in my opinion the test for releasing the records is likely met and the records must be provided after deleting the names of the officers who were not disciplined. The deletion of some other names may also be necessary based on privacy concerns, as explained further below.
DISCUSSION:
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007).
Although I have not been supplied with any records responsive to the FOIA request in this instance, it seems clear based upon the circumstances surrounding their creation that they constitute "employee evaluation or job performance records" under the FOIA. A.C.A. §25-19-105(c)(1) (Supp. 2007). The FOIA does not define the term "employee evaluation or job performance records" as used in A.C.A. § 25-19-105(c), nor has the phrase been construed judicially. This office has consistently taken the position, however, that any records that were created by or at the behest of the employer and that detail the performance or lack of *Page 4 
performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Op. Att'y Gen. Nos. 2007-225, 2006-111, 2006-038, 2006-035, 2005-030, 2004-211, 2003-073, 98-006, 97-222, 95-351, 94-306, and 93-055. This includes records that were generated as part of an investigation of allegations of the misconduct of an employee, including sexual misconduct, and that detail incidents that gave rise to an allegation of misconduct. See Op. Att'y Gen. Nos.2005-094, 2001-063, 2000-231, 2000-203, 2000-130, 1999-361, 1999-359, and 95-204. Ancillary documentation may also be included. For example, the term "job performance record" has been interpreted by this office to include incident reports, supervisors' memos, and transcripts of investigations, including witness statements. See, e.g., Op. Att'y Gen.2002-095 (and opinions cited therein). The records must have been created for the purpose of evaluating an employee in order to be classified as an evaluation or job performance record. See, e.g., Op. Att'y Gen. Nos. 2006-038 and 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, TheArkansas Freedom of Information Act (mm Press, 4th ed. 2004), at 196.
"Employee evaluation or job performance records" are releasable only if various conditions have been met. Subsection 25-19-105(c)(1) of the Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.
As a general matter, therefore, "employee evaluation or job performance records" (including "preliminary notes and other materials") are subject to disclosure under the FOIA only if the following three conditions are met: (1) there has been a final administrative resolution of any suspension or termination proceeding; (2) the records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and (3) there is a compelling public interest in the disclosure of the records. With regard, specifically, to the records at issue, which constitute job performance records of the superior officer, it appears that the first two conditions are met, assuming that the suspension is final and that the *Page 5 
records of the investigation formed a basis for the officer's suspension. And in my opinion, the third condition is met as well. Although the FOIA at no point defines the phrase "compelling public interest," two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins Peltz, supra at 207 (footnotes omitted).
The superior officer's high-ranking supervisory position is thus a relevant factor in determining whether a "compelling public interest" exists. The nature of the problem that led to the suspension also bears on the "compelling public interest" question. In this regard, this office has consistently opined that the public does have a compelling interest in the release of job performance records relating to sexual misconduct. See, e.g., Op. Att'y Gen. Nos. 2002-005 (sexual misconduct by sheriff's deputies involving female prisoners), 94-119 (allegations of sexual misconduct of university president which resulted in termination give rise to a compelling public interest), 93-356 (allegations of sexual misconduct of school principal which resulted in termination give rise to a compelling public interest), and 89-073 (allegations of sexual misconduct of police officers which resulted in suspension give rise to a compelling public interest). Additionally, it has been previously concluded in an analogous context that the balance tips in favor of disclosure where the allegations involve sexual misconduct by a manager directed toward a worker. Op. Att'y Gen. 91-003. *Page 6 
In my opinion, therefore, the test for releasing the investigation records, which constitute job performance records of the superior officer, is likely met. It must be recognized, however, that the test has not been met with respect to the records as they pertain to those employees who were not disciplined, because there was no suspension or termination as to such employees. Suspension or termination is a threshold requirement for the release of records under subsection25-19-105(c)(1). Because the internal investigation records likely constitute job performance records of all the employees involved in the incident(s), the release of the records as they pertain to those who were not disciplined would appear to be contrary to A.C.A. §25-19-105(c)(1).
When faced with a similar question concerning records that could be viewed as the job performance records of both an employee whose suspension was not final and another employee as to whom all conditions for release of the records were met, one of my predecessors opined as follows:
 It is my opinion under these circumstances that the records must, nevertheless, be released after deleting information pertaining uniquely to the employee as to whom there has been no final suspension decision. With this deletion, the records may be fairly characterized as the job performance records of only that employee whose suspension is final. While the records could conceivably be linked to the other employee, depending upon the availability of information necessary to make that connection, I do not believe this justifies withholding the records. . . . I believe the policy considerations require release of the job performance records following deletion of the name of the employee whose suspension is not final and any other information relating solely to that employee. Surely, the legislature did not intend under § 25-19-105(c)(1) to protect records that are relevant to job performance deficient enough to warrant suspension simply because the records also contain information pertaining to another employee whose suspension is not final. . . .
Op. Att'y Gen. 97-400 at 3.
I agree that this is the proper means of reconciling the nondisclosure and disclosure requirements with respect to the job performance records at issue. Accordingly, the names of employees who were not disciplined, but who were *Page 7 
included in the investigation, should be deleted based on A.C.A. §25-19-105(c)(1), prior to releasing the investigation records.
Several related matters require attention in addressing this FOIA request. You have referred to "accusations" that prompted the investigation, leading me to speculate that the responsive records might include records documenting the accusations. In that case, it is possible that such records must be evaluated under the test for the release of "personnel records," which is distinct from the test for "job performance or evaluation records." My predecessors and I have previously stated that unsolicited citizen "complaints," that is, complaints that were not created at the behest of the employer, are properly classified as "personnel records" under the FOIA. See,e.g., Op. Att'y Gen. Nos. 2008-025 and 2006-158. As I stated in Opinion2008-025:
 Unsolicited citizen complaints are not created by the employer to evaluate job performance. They thus do not come within the rationale behind the A.C.A. § 25-19-105(c)(1) exemption for "employee evaluation or job performance records," which is to allow supervisors to be candid in assessing employee performance and to identify weaknesses with an eye toward fostering improvement. See, e.g., Op. Att'y Gen. 2006-007, citing Op. Att'y Gen. 2005-074 and Watkins, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press).
Id. at 5.
This would similarly apply to "accusations." This office has further concluded that this applies to unsolicited complaints generated by co-workers. See, e.g., Op. Att'y Gen. Nos. 2002-326 and 2000-166.
"Personnel records" are disclosable under the FOIA except "to the extent that disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2007). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v.Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). It has been stated, under this test, that the employee's *Page 8 
interest outweighs the public's interest "only in cases where the record reveals the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends." Op. Att'y Gen. 2003-018,citing Young, supra. In addition, this office has previously concluded with regard to the release of complaint documents under subsection25-19-105(b)(12) that:
 . . . the public's interest in records relevant to the misconduct of a high ranking public official and of other public employees will generally outweigh those individuals' privacy interest in those records. It has been noted by a commentator on the Freedom of Information Act that "the `public interest' will ordinarily be great when there is a need for oversight to prevent wrongdoing or when the requested records would inform the public about agency misbehavior or other violations of the public trust." Watkins, The Freedom of Information Act, 3rd ed., at 139. Accord Op. Att'y Gen. No. 1998-001.
Op. Att'y Gen. 2000-203 at 5.
Thus, if the "accusations" you have referenced were unsolicited and documented, they may, depending upon their content, be subject to inspection and copying under the FOIA, regardless of any suspension or termination decision. The question of whether release of any information within any such documents would constitute a "clearly unwarranted invasion of privacy" as to any named individuals is a question of fact dependent upon the actual contents of the records, and as such must be determined in the first instance by the custodian of the records.See Op. Att'y Gen. Nos. 2008-025, 2004-260, 2003-336, 2003-201, 2001-101, and 98-001.
Another matter to be addressed involves your suggestion that the internal investigation records may mention employees or citizens who were not the subject of the investigation. As to any such named employees, I believe the records may also be the employees' "personnel records," in addition to being the "evaluation or job performance records" of the employees involved in the incident(s) who were the subject of the investigation. If the custodian, in applying the balancing test discussed above, determines that release of the records would constitute a clearly unwarranted invasion of privacy as to the employees who are mentioned but who were not the subject of the investigation, the records in my opinion should nevertheless be disclosed after redacting such employees' names. At least one of *Page 9 
my predecessors and I have reached a similar conclusion under comparable scenarios. See Op. Att'y Gen. 2007-206, citing Op. Att'y Gen. Nos.2002-237 (investigative report, which was the employee evaluation or job performance record of employee being investigated and personnel record of other employees mentioned therein, should be redacted to remove private personal information of other employees that would give rise to a clearly unwarranted invasion of personal privacy), and 2002-055 (investigative records pertaining to one employee and referencing other employees, constituted the personnel records of other employees and the other employees' names should be redacted where release would constitute a clearly unwarranted invasion of personal privacy).
As to any citizens mentioned in the internal investigation records who are not, and were not at the relevant time, employees of the city, these individuals could possibly have a constitutional privacy interest in such references. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. SeeMcCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. It has been stated in this regard that:
 Only information that is extremely personal in nature is likely to satisfy the third prong of the McCambridge test. As the U.S. Court of Appeals for the Eighth Circuit has observed, the constitutional right to privacy extends "only to highly personal matters representing the most intimate aspects of human affairs." The information must be such that its disclosure would be "either a shocking degradation or an egregious humiliation of [the individual] to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information."
Watkins Peltz, The Arkansas Freedom of Information Act, at 243-244 (footnotes omitted), quoting Eagle v. Morgan, 88 F.3d 620 (8th Cir. 1996) and Alexander v. Peffer, 993 F.2d 1348 (8th Cir. 1993); and citingSheets v. Salt Lake County, 45 F.3d 1383 (10th Cir. 1995) and Walls v.City of Petersberg, 895 F.2d 188 (4th Cir. 1990). *Page 10 
The question of whether information is protectable under the constitutional right of privacy is one of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge court), the custodian must then consider whether the governmental interest in disclosure under the FOIA (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their nondisclosure. Again, this determination will be a factual one, based upon the information available to the custodian. If it is determined factually that the privacy interest prevails, the references to these non-employees should be redacted before the records are released.
Finally, some mention should be made of the officer who resigned following the investigation. As explained above regarding the exemption for "employee evaluation or job performance records," suspension or termination is a triggering event for the release of such records under A.C.A. § 25-19-105(c)(1). Accordingly, an employee's resignation ordinarily will not meet the first prong of the test under this Code section. This office has therefore on numerous occasions stated that "a voluntary resignation in the face of a disciplinary challenge does not equate to a suspension or termination." See, e.g., Op. Att'y Gen. Nos. 2007-061, 2006-038, 2006-035, 2005-094, 2005-032, 2005-030, 2004-219, 2002-235, 2001-246, 98-188, and 97-063. On the other hand, other previous opinions of this office leave open the possibility that a coerced resignation might amount to a constructive termination. One of my predecessors has acknowledged that under certain facts, "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1)." Op. Att'y Gen.1997-063, citing Dobbins v. Everett, 2 Ark. App. 254, 620 S.W.2d 309
(1981) (employee, who, faced with certain termination, took less severe, embarrassing and traumatic option of resignation rather than discharge, did not quit voluntarily and without good cause for purposes of employment compensation decision).
There is no suggestion in your request for my opinion in the matter at hand that the officer's resignation may have been coerced. The issue is, moreover, a question of fact in each instance. As I have stated above, I am not a fact-finder in the issuance of Attorney General's opinions, and as a consequence, cannot determine whether any particular former employee who resigned was actually "terminated" for purposes *Page 11 
of the A.C.A. § 25-19-105(c)(1). I have previously stated that "only the custodian of records can make the threshold determination of whether a resignation constitutes a constructive termination." Op. Att'y Gen. 2007-061 at 5.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] I note that you view the FOIA request as only pertaining to the superior officer and not the other officers who were disciplined. I cannot opine regarding your identification of records in response to the FOIA request as that is a matter uniquely within your purview.See Op. Att'y Gen. 2006-158 (noting that the Attorney General's duty under A.C.A. § 25-19-105(c)(3)(B) arises after the records have been located and is limited to reviewing the custodian's decision as to "whether the records are exempt from disclosure." Id. However, because I believe the request in this instance is potentially broad enough to encompass other employees involved in the incident(s), I will discuss the test or tests that would apply, in my opinion, to the records as they pertain to such other employees. Again, however, I am not opining regarding your selection of responsive documents.
[2] You have stated that the investigation occurred as a result of "accusations," and if there are records of such accusations, it is possible that those records were not created in the course of the investigation. As explained further below, any such records are subject to a different test under the FOIA than records that were created in the investigation.
[3] It is my understanding that the officers has accepted the suspension and does not intend to appeal.