Stan Falk, Ph.D., Assistant Director Public Health Laboratory Arkansas DHHS, Division of Health 4815 West Markham Little Rock, AR 72205
Dear Dr. Falk:
I am writing in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the custodian's decision to release certain records of the Department of Health and Human Services is consistent with the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 Supp. 2005).
It is my understanding that an FOIA request was made by a newspaper reporter for "all documents generated from the [Department of Health and Human Services] internal investigation of the lab, including all records pertaining to personnel action. . . ." You have attached a letter from the custodian of the records stating that "[t]he Department of Health and Human Services received a freedom of information request asking for a copy of all information regarding any investigation and findings as well as documents you may have generated in response to any investigation regarding the Public Health Laboratory. This information may concern documents that would be contained in you[r] personnel file." See letter from Rick D. Hogan dated November 23, 2005.[1] The custodian states that "[i]t is our decision that documents described above are considered personnel records, [sic] are not exempt from disclosure. "The custodian also states that "[a]ll documents will be released. . . . However, documents will be redacted or not released to the extent they concern areas that are specifically exempt by the FOIA, such as social security numbers, home address, records of performance and medical records." You state that you "specifically object to the release of any records pertaining to the actions taken against [you] by DHHS" and that the "charges against [you] are false and misleading." You have also recited a number of "responses" to the unspecified "charges." You ask for my opinion under A.C.A. § 25-19-105(c)(3)(B)(i).
RESPONSE
I have not been provided with the records in question, and thus, I am unable to opine conclusively as to the release of any particular documents. However, I can set forth the law applicable to the release of such records. The custodian appears to have correctly recited the test for the release of personnel records, which are open to public inspection except to the extent their release would constitute a "clearly unwarranted invasion of personal privacy." Under this standard, personnel records can be subject to release with appropriate redactions, including, as the custodian suggests, redactions for social security numbers, home addresses and medical records. I do not have enough facts in this instance, however, to determine whether the custodian's decision to withhold "records of performance" is consistent with the FOIA. A different test applies to such records. That determination will depend upon whether the test for release of "employee evaluation or job performance records" has been met. It is up to the custodian to properly categorize individual records that are responsive to the request and to apply the appropriate test for the release of such records, subject of course to any requested judicial review.
The newspaper reporter in this instance has requested documents of an internal investigation, including records pertaining to "personnel actions." My duty to issue an opinion under A.C.A. § 25-19-105(c)(3)(B) is limited to determining whether a custodian's decision as to the release of "personnel or evaluation records" is consistent with the FOIA. I am unaware as to whether all records generated as a part of the internal investigation in question are in fact "personnel or evaluation records." I will set out general definitions of both "personnel records" and "employee evaluation and job performance records" below, and detail the test for the release of each, with specific reference to internal investigative records.
Although the FOIA does not define the term "personnel records," as used therein, this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records (discussed below) that relate to the individual employee. See,e.g., Ops. Att'y Gen. Nos. 2004-178; 2003-336; 2003-055; 2002-085; 2001-154; 1999-147. Under the FOIA, "personnel records" must be released except to the extent their release would constitute a "clearly unwarranted invasion of [the employee's] personal privacy." A.C.A. §25-19-105(b)(12).
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. SeeYoung v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial. Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998). For example, the public has a legitimate interest in information such as public employees' salaries and the fact that those employees have successfully completed any training that is required for the job. See, e.g., Ops. Att'y Gen. Nos.2001-172; 1997-033. However, the public has little interest in the personal details of an employee's insurance coverage or in an employee's specific test scores on a training exam. See, e.g., Ops. Att'y Gen. Nos. 2004-167; 2002-160. The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact. See, e.g., Ops. Att'y Gen. Nos. 2003-336; 2003-201; 2001-101; 1998-001.
Similarly, the FOIA does not define the term "employee evaluation or job performance record," as used therein, nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. Nos. 2004-211; 2003-073; 1998-006; 1997-222; 1995-351; 1994-306; 1993-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Op. Att'y Gen. No. 2004-012.
Under the FOIA's applicable standard, employee evaluation/job performance records are exempt from disclosure to the public unless the following three conditions have been met:
 There has been a final administrative resolution of any suspension or termination proceeding;
 The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
Employee evaluation or job performance records cannot be released unless each prong of the test above has been met.
With regard to records contained in internal investigation files, I stated in Op. Att'y. Gen. 2004-178 as follows:
 Although, again, I am not certain what records are contained in the requested internal affairs files, these types of files typically contain records related to an internal investigation of an employee's involvement in a particular event. This office has consistently taken the position that records in an internal affairs file that have been generated at the behest of the employer in the course of investigating a complaint against an employee constitute "employee evaluation/job performance records." Their releasability must therefore be evaluated under the three-part test discussed above. See, e.g., Op. Att'y Gen. No. 2001-063. However, records related to an internal investigation that were not created at the behest of the employer (such as an unsolicited complaint) are classified as "personnel records," and their releasability must be evaluated under the test that is applicable to that type of record, as discussed above. Id.
Id. at 5.
I also stated in Op. Att'y. Gen. 2005-032 that:
 I have previously opined that if a record was routinely created as a regular administrative practice and was not created as a part of an investigation of the employee, it does not constitute an employee evaluation/job performance record. See, e.g., Op. Att'y Gen. No. 2001-191; 2001-123. Moreover, the fact that a previously created record is later used in an internal investigation of an employee does not transform the record into an employee evaluation/job performance record. See Ops. Att'y Gen. Nos. 2001-191; 1996-257A; 1996-168; 1996-033.
Finally, I stated in Op. Att'y. Gen. 2003-306 that:
 Some of the records contained in the internal affairs file may not constitute either employee evaluation/job performance records or personnel records. Such records must be evaluated by the custodian to determine whether they are subject to other specific exemptions from disclosure. For example, medical and scholastic records in the file would be exempt from disclosure under A.C.A. § 25-19-105.
Again, I have not been provided with the records in question. I thus cannot come to any conclusions about the legality of releasing any particular records. The tests set out above will apply. You have indicated that at least some type of job "action" was taken against you. You have not specified, however, whether it was a suspension or termination for purposes of satisfying the first prong of the test for the release of employee evaluation or job performance records or whether there has been a "final administrative resolution" of any such suspension or termination. The custodian must determine these matters, as well as whether the remainder of the three-part test set out above has been met in this instance. I can state, however, that your recited list of "responses" to the "charges" against you are not relevant for purposes of determining whether the first prong of the test for the release of such records has been met. The first prong of the test for the release of employee evaluation or job performance records turns upon whether there has been a "final administrative resolution" of a suspension or termination proceeding. The fact that an employee may continue to dispute a "final administrative resolution" of a suspension or termination proceeding does not make the "administrative" resolution any less final for purposes of the release of records under the FOIA. See e.g., Op. Att'y. Gen. 95-204 (dismissing an assertion that there had been no final resolution because "no court had yet ruled on the issue of whether [the employee] was terminated for cause or wrongfully terminated" by stating that "[t]his is not the test . . . for purposes of the FOIA" and that "[t]he act refers to the exhaustion of `administrative remedies'"). The employee, of course, retains the right to seek judicial review of the custodian's decision as to the release of such records under the FOIA. A.C.A. § 25-19-105(c)(3)(C).
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] This notification was presumably given to comply with A.C.A. §25-19-105(c)(3)(A), which requires the custodian of personnel or evaluation records to notify the subject of the records of the custodian's decision regarding release of such records in response to an FOIA request.