David C. Peeples, Esq. West Memphis City Attorney Post Office Box 1728 West Memphis, AR 72303-1728
Dear Mr. Peeples:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B)(i), contained within the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2005)[1], for my opinion regarding the propriety of your provisional decision to release various documents contained within the personnel files of two officers of the West Memphis Police Department. You have reportedly determined that 53 of 157 pages in one officer's personnel file and 16 of 54 pages in the other officer's personnel file are subject to disclosure, with certain information such as social security numbers redacted. You have provided for my review the documents you have determined are subject to disclosure but not those you have decided to withhold. I consequently cannot opine regarding the disclosability of the latter group.
RESPONSE
My statutory duty under A.C.A. § 25-19-105(c)(3)(B)(i) is to state whether your decision as custodian is consistent with the provisions of the FOIA. In my opinion your decision to release the "personnel records" enclosed with your request, with the redactions you have noted, is consistent with the FOIA. The documents you have enclosed also contain certain "employee evaluation or job performance records." To the extent these documents formed a basis for a previous final suspension or termination decision, you are correct to release them, assuming that there is a "compelling public interest" in their disclosure. This latter issue is one of fact, which I cannot conclusively determine without reference to all the surrounding circumstances. I have set out the relevant factors to consider in making that determination below.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005). Given that the officers at issue are city employees, I believe the records you have supplied for my review clearly qualify as "public records" under this definition.
As my predecessor noted in Op. Att'y Gen. No. 99-305:
If records fit within the definition of "public records" . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law. The "unwarranted invasion of personal privacy" exemption is found in the FOIA at A.C.A. § 25-19-105(b)[12]. It exempts from public disclosure "personnel records to the extent that disclosure would constitute clearly unwarranted invasion of personal privacy. . ." The FOIA does not define the term "personnel records." Whether a particular record constitutes a "personnel record" within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that "personnel records" are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants. See, e.g., Op. Att'y Gen. No. 1999-147, citing Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd Ed., 1998) at 134.
Accord, Ark. Ops. Att'y Gen. Nos. 2006-141 and 2001-122.
In my opinion various of the records you have tentatively decided to release are "personnel records" for purposes of the FOIA. As previously noted, under the relevant statute, "personnel records" are open to public inspection and copying except "to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2005).
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase and adopted a balancing test to determine if it applies, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice,308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the custodian must disclose the personnel records. As the court noted in Young:
The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
308 Ark. at 598. However, as the court noted in Stilley v. McBride,332 Ark. 306, 312, 965 S.W.2d 125 (1998), when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employees' privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Id. at 313. The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ark. Ops. Att'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055; Watkins, supra at 126. The test is an objective one. See, e.g., Op. Att'y Gen. 96-133.
At issue, then, is whether disclosing the personnel records you have supplied me would amount to a "clearly unwarranted invasion of personal privacy." In my opinion, personnel records of the sort you have tentatively decided to release are subject to inspection and copying under the FOIA. See, e.g., Ark. Ops. Att'y. Gen. Nos. 2006-141; 2005-260; 2005-114; 2005-100; 2005-085; 2005-058; 2005-057; 2004-258; 2004-256; 2004-255; 2004-202; 2002-257; 2002-107. My predecessors and I have consistently opined that basic employment information and salaries of public employees are subject to public inspection and copying. See, e.g., Ark. Ops. Att'y Gen. Nos. 2005-051; 2003-298 and 2002-087. This office has further previously concluded that the names, races, dates of hire and job titles of public employees are subject to disclosure under the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos. 1995-012 and 91-351. The public interest in this type of information is substantial and any potential privacy interest does not outweigh it.
You have redacted from the records you have supplied me certain information such as social security numbers and home addresses of the officers in question. In my opinion, theses redactions are appropriate. Section 25-10-105(b)(13) of the Code exempts from disclosure the home addresses of nonelected municipal employees — a category that includes the officers at issue in your request. This office has further opined on numerous occasions that social security numbers are not subject to disclosure under the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos.2007-013; 2006-035; 2003-153; 93-300; and 91-003.
Various of the documents you have supplied me qualify as "employee evaluation/job performance records" as that term is used in A.C.A. § 25-19-105(c). The FOIA does not define the term "employee evaluation or job performance records" nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Ark. Op. Att'y Gen. No. 2006-038; 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, The Arkansas Freedom of Information Act (mm Press, 4th ed. 2004), at 196.
According to opinions of this office, documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigation of allegations of misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-035; 2003-078; 2001-203; 99-147; 93-105; 93-055; 92-231; 91-324. This office has further held that letters of termination that set forth the reasons for the termination are also employee evaluation or job performance records. See, e.g., Ark. Ops. Att'y Gen. Nos.2006-147 and 95-171 (relying on Ark. Ops. Att'y Gen. Nos. 92-191 and 88-97).
"Employee evaluation or job performance records" are releasable only if various conditions have been met. Subsection 25-19-105(c)(1) of the Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.
To the extent any of the records form a basis[2] for administratively resolved disciplinary proceedings, the pertinent issue, with respect to the employee evaluation/job performance records, is whether a compelling interest in disclosure of these documents exists. This is ultimately a factual determination for you to make. My predecessor has previously stated the following with regard to this portion of the test:
The FOIA at no point defines the phrase `compelling public interest' as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, Professors Watkins and Peltz, referring to Attorney General Opinions on this issue, offer the following guidelines:
 . . . [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the `compelling public interest' requirement.
Ark. Op. Att'y Gen. 2004-272 at 5, quoting Watkins Peltz, supra at 207 (footnotes omitted).
Professors Watkins and Peltz note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") They have also noted, however, that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police." Id. at 207. My predecessor has indicated that the public's interest in the performance of police officers is particularly acute where the documents reflect a violation of departmental rules by a police officer in his interactions with the public. See, e.g., Ops. Att'y Gen. 2006-163; 2006-158 and 2006-106.
In considering whether you were correct in your initial determination that the employee evaluation/job performance records you have supplied are subject to disclosure based upon a compelling public interest, the factors above must be weighed. It may be that some of the factors are stronger than others. No one factor is controlling and the question is one of fact in each instance. See, e.g., Ops. Att'y Gen. 2006-147; 2006-026; and 2006-007. It may be that a prior disciplinary infraction that might seem relatively insignificant when viewed in isolation takes on greater significance in light of a later public controversy surrounding the officer's conduct. Although you have enclosed the relevant records for my review, I am not in a position to make a definitive determination of this factual issue without access to all the surrounding facts and circumstances. See, e.g., Op. Att'y Gen. 2006-026
(Attorney General could not make a definitive determination as to existence of compelling public interest in absence of all the facts). Again, the issue is one of fact for the custodian of records to determine.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] The Act has also been recently amended by Acts 268, 726 and 998 of 2007.
[2] I should note that certain documents, including "Employee Progress Reports," an "Employee Performance Rating" and a related "Summary Sheet" may or may not have formed a basis for any disciplinary action against the second officer. This is a question of fact. If they did not form a basis for any such disciplinary action, the test for release of these records has not been met. See e.g., Op. Att'y. Gen. 2006-147.