Adam G. Weeks, Esq. James Law Firm 1821 South Broadway Little Rock, Arkansas 72206
Dear Mr. Weeks:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B)(i) (Supp. 2007), which is contained within the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. § 25-19-101
— 109 (Repl. 2002 and Supp. 2007), for my opinion regarding the propriety of the decision by the custodian of records to withhold from disclosure certain records in the possession of the Pine Bluff Police Department (the "Department") relating to disciplinary investigations. Subsection 25-19-105(c)(3)(B)(i) provides in pertinent part that "[e]ither the custodian, requester, or the subject of the records may immediately seek an opinion from the Attorney General, who, within three (3) working days of receipt of the request, shall issue an opinion stating whether the decision is consistent with this chapter." Although you do not state so directly in your request, I will proceed on the assumption that your firm represents the subject of the FOIA request.
My inquiries suggest that certain of the requested documents have been provided to your client. Apparently, the sole issue is the custodian's decision to withhold from you several disciplinary records that would be responsive to the following request:
 All records pertaining to allegations of explicit or implicit harassment — be it racial, sexual, verbal, age-related, disability-related, related to sexual orientation, and/or nationality — by any member of the Pine Bluff Police Department, be they uniformed or non-uniformed. *Page 2 
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007).
Although I have not been supplied with any records responsive to your request, I assume that most of the documents constitute "employee evaluation or job performance records" under the FOIA. See, e.g., Op. Att'y Gen. No. 2006-157 (classifying investigative records of sexual harassment as "employee evaluation or job performance records"). "Employee evaluation or job performance records" are releasable only if various conditions have been met. Subsection 25-19-105(c)(1) of the Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.[1]
The FOIA does not define the term "employee evaluation or job performance records" as .3used in A.C.A. § 25-19-105(c), nor has the phrase been construed judicially. This office has consistently taken the position that any records that *Page 3 
were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ark. Ops. Att'y Gen. Nos. 2007-225; 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055. The record must also have been created for the purpose of evaluating an employee.See, e.g., Ark. Op. Att'y Gen. No. 2006-038; 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, The Arkansas Freedom of Information Act (mm Press, 4th ed. 2004), at 196.
In determining whether to withhold the above referenced records, the custodian will need to consider whether the factual predicates recited in A.C.A. § 25-19-105(c)(1) exist. In correspondence to the Department, the city attorney has indicated that the responsive records fail to meet the conditions set forth in A.C.A. § 25-19-105(c)(1) because no compelling public interest exists in their disclosure. Given that I am not a finder of fact and am not in possession of the files, I can do no more than set forth the general standard the custodian should apply in reviewing the determination regarding whether a compelling public interest exists in disclosure.[2] *Page 4 
The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins Peltz, supra at 207 (footnotes omitted). Professors Watkins and Peltz also note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of *Page 5 
`rank-and-file' workers are at issue.") With respect to allegations of police misconduct, I noted as follows in Op. Att'y Gen. No. 2007-206:
 I and my predecessors have previously stated . . . on this general topic that a compelling public interest likely exists in information reflecting a violation of departmental rules by a "cop on the beat" in his interactions with the public. See Op. Att'y Gen. 2006-106. If the prior disciplinary records reflect a suspension based on this type of infraction, a strong case for the finding of a compelling public interest exists.
However, the existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances. The custodian must weigh all these facts in making the determination. Subject to this qualification, I will note that this office has repeatedly held that allegations of sexual harassment by a public employee raise a compelling public interest in disclosure under the FOIA. See Op. Att'y Gen. No. 2006-157 and opinions cited therein. As my immediate predecessor noted in Op. Att'y Gen. No. 2005-236:
 I and my predecessors have often concluded that information relating to sexual misconduct in connection with public employment gives rise to a compelling public interest for purposes of A.C.A. § 25-19-105(c)(1). See e.g.,. Ops. Att'y. Gen. 2005-032 (sexual harassment); 2004-012 (same); 2002-005 (sexual misconduct by sheriff's deputies involving female prisoners); 2002-095 (sexual harassment). See also, Ops. Att'y. Gen. 2002-237; 2001-028; 1999-361; 1994-119; 1993-356; 1991-003 and 1989-073.
This office has reached a similar conclusion with respect to allegations of racial discrimination. See, e.g., Op. Att'y Gen. No. 2002-326.
I feel obliged to note that your request for records relating to allegations of harassment is stated broadly enough that it could include unsolicited complaints containing such allegations. In my opinion, such documents are subject to a different standard of disclosure than that applicable to employee evaluation and job performance records. As I noted in Op. Att'y Gen. No. 2008-025: *Page 6 
 Different tests apply to the release of citizen complaint documents, on the one hand, and documents created by supervisors in the course of investigating such complaints, on the other. . . . In my opinion, any citizen complaint documents responsive to the request are subject to inspection and copying under the FOIA except to the extent that their release would constitute a "clearly unwarranted invasion of personal privacy." In this regard, the applicable test for release of citizen complaints is the A.C.A. § 25-19-105(b)(12) exemption for personnel records, rather than the A.C.A. § 25-19-105(c)(1) exemption for "employee evaluation or job performance records," which was apparently applied by the custodian. Thus, any citizen complaint documents, and not just those that eventually resulted in suspension or termination, are subject to disclosure except to the extent that their release would constitute a "clearly unwarranted invasion of personal privacy." The question of whether release of any information within any citizen complaints would constitute a "clearly unwarranted invasion of privacy" is a question of fact, dependent upon the actual contents of the record in question.
 I have not been provided with, nor have I reviewed, any responsive records in this regard. I thus cannot determine conclusively whether any of the contents of such documents would give rise to a clearly unwarranted invasion of personal privacy if released. This is a decision that must be made in the first instance by the custodian of records.
This office has further concluded that this same standard of disclosure applies to unsolicited complaints generated by co-workers of the subject of the request. See, e.g., Ops. Att'y Gen. Nos. 2002-326 and 2000-166.
As I noted in my previous opinion, "personnel records" are disclosable under the FOIA except "to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." A.C.A. §25-19-105(b)(12) (Supp. 2007). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See *Page 7 Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial. Stilley v.McBride, 332 Ark. 306, 965 S.W.2d 125 (1998). The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact to be made by the custodian of records. Ops. Att'y Gen. 2008-025; 2004-260; 2003-336; 2003-201; 2001-101; 98-001.
Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Stilley, supra. at 313. The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055; Watkins Peltz, supra at 126. The test is an objective one.See, e.g., Ark. Op. Att'y Gen. 96-133.
You should further be aware that any party who is identifiable from any of the requested records may have a constitutionally protected privacy interest in those records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
The question of whether information is protectable under the constitutional right of privacy is one of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge court), the custodian must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate *Page 8 
interest in the matter) outweighs the privacy interest in their nondisclosure. As always, the person claiming the right will have the burden of establishing it. Although I find it unlikely that the records in the file you have identified would meet the McCambridge test for protectable constitutional privacy, this determination will be a factual one, based upon the information available to the custodian.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
[1] Given the unambiguous requirement in this statute that there have been, inter alia, a suspension or termination to support disclosure, I must respectfully take issue with the suggestion in your FOIA request that what you term the required "final action" could amount to no more than "a verbal warning" or "a written reprimand."
[2] In Op. Att'y Gen. No. 2006-158, my predecessor accurately summarized as follows the respective roles of the custodian of records, on the one hand, and this office, on the other:
 As custodian, you must locate and provide copies of public records that have been requested pursuant to the FOIA, assuming that the request is "sufficiently specific." A.C.A. §§ 25-19-105(a)(2)(A) ("A citizen may make a request to the custodian to inspect, copy, or receive copies of public records[;]" 25-19-105(a)(2)(C) ("The request shall be sufficiently specific to enable the custodian to locate the records with reasonable effort[;]" 25-19-105(d)(2)(A) ("Upon request and payment of a fee . . . the custodian shall furnish copies of public records if the custodian has the necessary duplicating equipment.") In the event the requester seeks access to "personnel or evaluation records," you must "determine within twenty-four (24) hours of the receipt of the request whether the records are exempt from disclosure and make efforts to the fullest extent possible to notify the person making the request and the subject of the records of that decision." Id. at (c)(3)(A). Your decision regarding any exemption in connection with such personnel or evaluation records may then be subjected to my review in accordance with A.C.A. § 25-19-105(c)(3)(B)(i), which states that "[e]ither the custodian, requester, or the subject of the records may immediately seek an opinion from the Attorney General, who, within three (3) working days of receipt of the request, shall issue an opinion stating whether the decision is consistent with this chapter."As you can see, my duty to issue an opinion under A.C.A. § 25-19-105(c)(3)(B) arises after the records have been located and is limited to reviewing the custodian's decision as to "whether the records are exempt from disclosure." A.C.A. § 25-19-105(c)(3)(A), supra (emphasis added). I am authorized only to review your determination regarding what documents are subject to release, not to advise you in your initial selection of responsive documents. See Op. Att'y Gen. 2005-175. Accordingly, I am neither authorized nor equipped to opine on your identification of personnel or evaluation records in response to this FOIA request. Identifying records responsive to the request is a task uniquely within your purview, both as a statutory matter and as a practical matter because it requires factual determinations that are outside the scope of an opinion from this office. See Op. Att'y Gen. 2005-104. Consequently, to the extent you seek my review of your determination that the enclosed file is responsive to the FOIA request in this instance, I must decline to issue an opinion.