Carol Billings, Esq. Pine Bluff City Attorney 200 East 8th Avenue, Suite 203 Pine Bluff, Arkansas 71601
Dear Ms. Billings:
I am writing in response to your request, made pursuant to A.C.A. §25-19-105(c)(3)(B)(i) (Supp. 2007), which is contained within the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. §§ 25-19-101
— 109 (Repl. 2002 and Supp. 2007), for my review of your provisional decision to withhold from disclosure certain records in the possession of the Pine Bluff Police Department (the "Department") relating to a disciplinary proceeding involving a Pine Bluff Police Department officer. Subsection 25-19-105(c)(3)(B)(i) provides in pertinent part that "[e]ither the custodian, requester, or the subject of the records may immediately seek an opinion from the Attorney General, who, within three (3) working days of receipt of the request, shall issue an opinion stating whether the decision is consistent with this chapter."
RESPONSE
It is not entirely clear based upon the record you have provided whether the file at issue is subject to disclosure under the FOIA. In my analysis below, I will set forth the standard that you, as custodian of records, should apply in testing your provisional decision to withhold the records at issue. You should base your decision upon the content of the records themselves, as well as any pertinent attendant facts. *Page 2 
Apparently, the sole issue is your decision, as the custodian of records, to withhold a disciplinary file that would be responsive to the following request:
 All records pertaining to allegations of explicit or implicit harassment — be it racial, sexual, verbal, age-related, disability-related, related to sexual orientation, and/or nationality — by any member of the Pine Bluff Police Department, be they uniformed or non-uniformed.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2007).
You have provided me a copy of the file at issue, most of which comprises "employee evaluation or job performance records" under the FOIA. See, e.g., Op. Att'y Gen. No. 2006-157 (classifying investigative records of harassment as "employee evaluation or job performance records"). "Employee evaluation or job performance records" are releasable only if various conditions have been met. Subsection25-19-105(c)(1) of the Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure. *Page 3 
The FOIA does not define the term "employee evaluation or job performance records" as used in A.C.A. § 25-19-105(c), nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.See, e.g., Ark. Ops. Att'y Gen. Nos. 2007-225; 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Ark. Op. Att'y Gen. No. 2006-038; 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, The Arkansas Freedom ofInformation Act (mm Press, 4th ed. 2004), at 196.
In determining whether to withhold the above referenced records, you will need to consider whether the factual predicates recited in A.C.A. § 25-19-105(c)(1) exist. In correspondence to the Department, you have provisionally made this determination by indicating that the responsive records fail to meet the conditions set forth in A.C.A. §25-19-105(c)(1) because no compelling public interest exists in their disclosure.
The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee *Page 4 
within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins Peltz, supra at 207 (footnotes omitted). Professors Watkins and Peltz also note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") With respect to allegations of police misconduct, I noted as follows in Op. Att'y Gen. No. 2007-206:
 I and my predecessors have previously stated . . . on this general topic that a compelling public interest likely exists in information reflecting a violation of departmental rules by a "cop on the beat" in his interactions with the public. See Op. Att'y Gen. 2006-106. If the prior disciplinary records reflect a suspension based on this type of infraction, a strong case for the finding of a compelling public interest exists.
See Op. Att'y Gen. 2005-175, citing Watkins Peltz, supra at 207 (noting that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police."). In Opinion 2006-106, my immediate predecessor drew the following conclusion with respect to an allegation of police misconduct:
 With regard to the existence of a "compelling public interest in disclosure". . ., it is my opinion that the nature of the problem that led to the suspension compels disclosure in this instance where the activities detailed in the records violated administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety.[1] See generally J. Watkins, THE *Page 5 
ARKANSAS FREEDOM OF INFORMATION ACT 135 (2nd ed. 1994) (discussing the "compelling public interest" question).
 In my opinion, the operative language in this excerpt is administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety."
Id. at 5, quoting Op. Att'y Gen. 1997-400. See also, Op. Att'y Gen.1998-210.
Based upon the file and your opinion request, it appears that there has been a final administrative resolution of a suspension in this case and that the employee evaluation/job performance records formed a basis for the suspension, leaving the operative question being only whether a compelling public interest exists in the disclosure of the records. My review of the file indicates that the subject of the request was a regular uniformed officer and hence not particularly high-ranking. He is, however, a police officer — a fact that in itself has been interpreted as implicating the public interest. See Op. Att'y Gen.2006-106. The record further does not reflect that the incidents complained of generated any particular public controversy. Finally, it is unclear from the record whether the nature of the infraction was of a gravity that would warrant characterizing the public interest in disclosure as "compelling." Under these circumstances, it is your role as fact-finder and custodian of the records to weigh these factors and determine whether the file is subject to disclosure.
Based upon my review of the record, I am unable definitively to answer this purely factual question. The existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances. You presumably have weighed all these facts in making your determination to withhold disclosure of this file.
The file you have provided contains what appears to be an unsolicited complaint. In my opinion, this complaint is subject to a different standard of disclosure than that applicable to employee evaluation and job performance records. As I noted in Op. Att'y Gen. No. 2008-025: *Page 6 
 Different tests apply to the release of citizen complaint documents, on the one hand, and documents created by supervisors in the course of investigating such complaints, on the other. . . . In my opinion, any citizen complaint documents responsive to the request are subject to inspection and copying under the FOIA except to the extent that their release would constitute a "clearly unwarranted invasion of personal privacy." In this regard, the applicable test for release of citizen complaints is the A.C.A. § 25-19-105(b)(12) exemption for personnel records, rather than the A.C.A. § 25-19-105(c)(1) exemption for "employee evaluation or job performance records," which was apparently applied by the custodian. Thus, any citizen complaint documents, and not just those that eventually resulted in suspension or termination, are subject to disclosure except to the extent that their release would constitute a "clearly unwarranted invasion of personal privacy." The question of whether release of any information within any citizen complaints would constitute a "clearly unwarranted invasion of privacy" is a question of fact, dependent upon the actual contents of the record in question.
This office has further concluded that this same standard of disclosure applies to unsolicited complaints generated by co-workers of the subject of the request. See, e.g., Ops. Att'y Gen. Nos. 2002-326 and 2000-166.
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private.See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial. Stilley v.McBride, 332 Ark. 306, 965 S.W.2d 125 (1998). The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact to be made by the custodian of records. Ops. Att'y Gen. 2008-025; 2004-260; 2003-336; 2003-201; 2001-101; 98-001. *Page 7 
Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy in terest s outweighed that of the public's under the circumstances presented." Stilley, supra. at 313. The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055; Watkins Peltz, supra at 126. The test is an objective one.See, e.g., Ark. Op. Att'y Gen. 96-133.
You should further be aware that any party who is identifiable from any of the requested records may have a constitutionally protected privacy interest in those records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information.See McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909
(1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
The question of whether information is protectable under the constitutional right of privacy is one of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge court), the custodian must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their nondisclosure. As always, the person claiming the right will have the burden of establishing it. Although I find it unlikely that the records in the file you have identified would meet theMcCambridge test for protectable constitutional privacy, this determination will be a factual one, based upon the information available to you as the custodian. Although you have supplied me with the disciplinary file in this matter, I am insufficiently acquainted with the facts to opine definitively whether you are correct in your determination to withhold these documents from disclosure. *Page 8 
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
DM/JHD:cyh
[1] Notwithstanding this formulation, I must note that this office has previously opined that undermining the public trust or compromising public safety are not necessary elements to warrant the disclosure of employee evaluation/job performance records under the FOIA. See,e.g., Op. Att'y Gen. 2006-147, citing Op. Att'y Gen.2003-132 (opining that the fact that alleged misconduct was that of a highly placed individual might in itself warrant disclosure of records relating to the incident at issue). *Page 1