Mr. Greg Matthews c/o Alan T. Wilbourn Public Information Officer Fayetteville Public Schools 1000 West Stone Street Fayetteville, Arkansas 72701
Dear Mr. Matthews:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105 (c)(3)(B)(i) (Supp. 2007), for an opinion concerning the release a certain documents pursuant to the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. § 25-19-101 — 109 (Repl. 2002 and Supp. 2007). You state that the Northwest Arkansas Times has filed a FOIA request with the Fayetteville School District seeking the release of any and all records that formed the basis for the District's decision to suspend you from your position at Woodland Jr. High School. You object to the release of the records. You express your belief that the criteria for the release of job performance or evaluation records have not been met, specifically the requirements of "final administrative resolution" and "compelling public interest." You also state that you view the release of the records "as an unwarranted invasion of [your] privacy."
It is my understanding that the District intends to release the requested documents that led to your suspension.
RESPONSE
My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether the decision of the custodian of records as to the release of "personnel or evaluation records" is consistent with the FOIA. Not having seen the records at issue, I cannot opine definitively concerning the release of any specific documents. *Page 2 
Assuming, however, that the records the District intends to release fall within the category of "employee evaluation or job performance" records discussed below, I can opine based upon my understanding of the surrounding facts that the custodian's decision to release the records is likely consistent with the FOIA.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-105(5)(A) (Supp. 2007).
Given that the records in question are records of the school district that pertain to the disciplining of a school employee, I believe they clearly qualify as "public records" under this definition. Accordingly, they can only be withheld if an exception prohibits their disclosure. As one of my predecessors noted: "If records fit within the definition of `public records' . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." Op. Att'y Gen.99-305.
Because the FOIA request at issue is apparently directed toward records that formed the basis for your suspension, I will assume for purposes of this opinion that the pertinent exemption is the one for "employee evaluation or job performance records." A.C.A. § 25-19-105(c)(1). I will therefore focus my analysis on to that type of document.[1] The FOIA does not define "employee *Page 3 
evaluation or job performance records," nor has this phrase been construed by the Arkansas Supreme Court. This office has opined, however, that the phrase refers to records that were created by (or at the behest of) the employer, and that detail the employee's performance or lack of performance on the job. Op. Att'y Gen. 2004-012 (and opinions cited therein). It includes records that were generated while investigating allegations of employee misconduct and that detail incidents giving rise to an allegation of misconduct. Id. This office has specifically opined that it includes written reprimands and letters of caution, documents supporting a recommendation for suspension or termination, letters related to promotions and demotions, and records that were generated by or at the behest of the employer as part of an investigation of allegations of misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g., Op. Att'y Gen. Nos. 2006-035, 2003-078, 2001-203, 99-147, 93-105, 93-055, 92-231, and 91-324.
The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies.See John J. Watkins Richard J. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT, 196 (4th ed., m m Press 2004). It has therefore been opined that "[d]ocuments not *Page 4 
created in the evaluation process do not come within the rationale behind the 25-19-105(c)(1) exemption." Op. Att'y Gen. 2005-267, citing Op. Att'y Gen. 2005-094.
Not having seen the specific documents at issue, I cannot definitively state that they are evaluation or job performance records under this exemption. The custodian must make that initial determination. Assuming, however, that they fall into this category, then they are releasable only if certain conditions have been met. Subsection 25-19-105(c)(1) provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.
Employee evaluation or job performance records cannot be released unless each prong of this test has been met: 1) There has been a final administrative resolution of a suspension or termination; 2) The records in question formed a basis for the decision to suspend or terminate the employee; and 3) There is a compelling public interest in the disclosure of the records in question.
Ordinarily, it can readily be determined whether there has been a final administrative resolution of a termination or suspension and whether the requested records formed a basis for that termination or suspension. See Op. Att'y Gen. Nos. 2006-007 and 2005-011 (noting that these are questions of fact for the custodian.) Because the custodian has decided to release the records in response to the FOIA request at hand, I assume the custodian has determined that the first, threshold, so-called "finality" requirement has been met in this instance. This seems to be the case, based upon the information available to me. Although I am not a fact finder in issuing opinions, it appears from reported accounts of your suspension that you initially requested a hearing on the suspension and/or the non-renewal of your contract, pursuant to the Teacher Fair Dismissal Act ("TFDA"), A.C.A. § 6-17-1501et seq.; but you subsequently reached an agreement with the District that involves your reassignment to another position within the District. Brett Bennett, Matthews Gets Job Back with District, Northwest Arkansas Times, http://www.nwanews.com/nwat/news/76778 (last accessed June 8, 2009). This *Page 5 
suggests that for purposes of the FOIA, the initial suspension decision is "final" because your administrative remedies are exhausted and the board did not take action to overturn the suspension. See generally J. Watkins and R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT 202 (m m press, 4th ed. 2004) (noting that "[t]he term `final administrative resolution' refers to the final decision-making step taken by the employing entity, regardless of the bureaucratic level at which the decision is made."); A.C.A. § 6-17-1508 (Repl. 1999) (giving a superintendent the authority to suspend a teacher). Assuming these assumptions are correct (administrative remedies exhausted and initial suspension not overturned), then the "finality" requirement appears met.
The two remaining factual predicates are that the records "formed a basis" for the suspension and that there be a "compelling public interest" in disclosure. The issue of whether requested records "formed a basis" for termination is generally interpreted to mean that the records in question reflect or detail the incidents or conduct that led to the suspension (or termination). Op. Att'y Gen. 2008-065 (and opinions cited therein). This is a question of fact to be determined by the records' custodian, who can presumably inquire of those who made the decision. As noted above, I have not seen the particular records at issue; but I assume that the custodian has properly determined that they meet this prong of the test.
The final prong of the test for release of employee evaluation or job performance records is that there be a "compelling public interest" in their disclosure. A.C.A. § 25-19-105(c)(1). The FOIA at no point defines the phrase "compelling public interest" as used in this provision. However, the following guidelines have been offered by two commentators:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee *Page 6 
within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
THE ARKANSAS FREEDOM OF INFORMATION ACT, supra at 207 (footnotes omitted).
In my opinion, each of these factors weighs in favor of the custodian's apparent determination in this instance that there is a compelling public interest in the records' disclosure. This office has consistently opined that the public has a particularly heightened interest in records reflecting the conduct of public school teachers during school hours, during school events, and especially when students are affected by that conduct. See, e.g., Op. Att'y Gen. Nos. 2002-320; 2002-158; 2001-142; 2001-144; 2001-148; 2001-153; 2001-151; 2001-150. With regard to the existence of a "public controversy" related to the agency and its employees, as my immediate predecessor noted in Op. Att'y Gen. 2006-147, quoting THE ARKANSAS FREEDOM OF INFORMATION ACT,supra at 206, "if the issue is debated publicly and has foreseeable and substantial ramifications for those who are not direct participants, it is a public controversy." It appears clear from the newspaper accounts surrounding your suspension that this standard is met.
In conclusion, therefore, based upon my understanding of the surrounding facts, the custodian in my opinion has in all likelihood properly decided to release any evaluation or job performance records that formed the basis for your suspension.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General
[1] I should nevertheless note the possibility that the records that are responsive to the FOIA request in this instance (records that formed the basis for your suspension) were not all created in the evaluation process. The records must be evaluated by the custodian to determine whether any of them are simply public records and subject to no exemption, or whether any are subject to other specific exemptions from disclosure. The exemption for "personnel records" should be noted in this regard. The FOIA does not define the term "personnel records," but this office has consistently taken the position that "personnel records" are all records, other than employee evaluation/job performance records, that pertain to individual employees, former employees or successful job applicants. E.g., Op. Att'y Gen. 2004-212. Such records are exempt only to the extent their disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2007). The FOIA likewise does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase, applying a balancing test, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992). The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact to be decided by the custodian of records. See, e.g., Op. Att'y Gen. 2008-033 (and opinions cited therein). I will not undertake any further discussion of the "personnel records" exemption, but instead refer you to the latter opinion for guidance.
I should also emphasize in this regard that the "unwarranted invasion of personal privacy" test applies only to "personnel records." I am prompted to note this distinction by your expressed concern that the release of the records would be an unwarranted invasion of your privacy. The FOIA's test for the release of employee evaluation or job performance records does not include a balancing for personal privacy. While it is conceivable that some constitutional privacy concerns could come into play (see McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989), wherein the court recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the Freedom of Information Act), it seems that only information of an "extremely personal" nature is likely to satisfy this test. See Op. Att'y Gen. 2009-021 (discussing the constitutional privacy interest).

 *Page 1