Mr. George Butler, Jr. Washington County Attorney
280 North College, Suite 501 Fayetteville, Arkansas 72701
Dear Mr. Butler:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B)(i), which is contained within the Arkansas Freedom of Information Act (the FOIA), A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2009), for my opinion regarding the provisional decision of the custodian of records of the Washington County Sheriffs Office to withhold from disclosure various records reflecting, first, commendations and disciplinary actions relating to specified personnel associated with the Sheriffs office, secondly, several documents records reflecting an employee's attendance records and, finally, [a]ll Washington County Sheriffs Office memos from management to staff about sexual harassment since January 2005.
RESPONSE
You have submitted with your request various records that the custodian has provisionally determined are not subject to disclosure under the FOIA. These records comprise the following:
 • Various documents relating to disciplinary actions taken with respect to specified employees of the Washington County Sheriffs Office. Of these actions, four resulted in suspensions of one to two working days. One resulted in a dismissal from employment, although the former employee was not one of the individuals whose records were requested pursuant to the written request for inspection of documents. Various other documents which you have not produced for my review relate to two individuals *Page 2 
whose dismissals were recharacterized as resignations pursuant to a court-approved settlement agreement.
 • Two documents, captioned Complete Payroll Report, reporting an individual employee's hours of service in portions of February and March 2009.
 • A document, captioned Employee Grievance Form, accompanied by a letter detailing the grievance, submitted in January 2006, submitted by one of the employees who were suspended questioning the contents of a letter of counseling that accompanied the order of suspension. With respect to this grievance, you have also submitted a memorandum, also executed in January 2006, in which the employee withdraws the grievance and expresses satisfaction with a reported modification of the letter of counseling.
 • A System Email, issued on September 1, 2006, setting forth general policy regarding sexual harassment in the wake of a recent sexual harassment/harassment investigation that occurred in the Detention Center.
 • A System Email, also issued on September 1, 2006, listing what appear to be various personnel of the Washington County Sheriffs Office.
 • An undated excerpt from Chapter VIII of an apparent manual, entitled PRISONER SEPARATION, designated Sections 8-1001 and 8-1002, detailing policy regarding the separation of inmates.
 • Various manual statements of policy regarding general safety rules, insubordination, appropriate employee conduct, etc.
At the outset, I should note the limited scope of my responsibility in reviewing a custodian's provisional decision to release or to withhold records in response to an FOIA request. By statute, I am charged only with reviewing within three days of a request to do so the custodian's decision with respect to personnel or evaluation records.[1] The final five entries listed above are general in their scope and do not constitute personnel or evaluation records of individual department employees. I *Page 3 
will consequently not opine as to the propriety of their release under the FOIA. However, I will note generally that public records as defined immediately below are subject to disclosure unless a statutory exemption from disclosure exists.
The FOIA provides for the disclosure upon request of certain public records, which the Arkansas Code defines as follows:
 Public records means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.[2]
Because the individual subjects of your request are employees of a sheriff's office, I believe the requested documents specifically regarding these individuals are clearly public records under the definition set forth above. However, the FOIA provides for certain exemptions from disclosure, the most pertinent being that set forth at A.C.A. § 25-19-105(c)(1) (Supp. 2009), which exempts from disclosure under specified circumstances employee evaluations and job performance records. Employee evaluation or job performance records are releasable only if certain conditions have been met. Subsection 25-19-105(c)(1) of the Code provides in pertinent part:
 [A]ll employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure. *Page 4 
The FOIA does not define the term employee evaluation or job performance records,, nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.[3] The record must also have been created for the purpose of evaluating an employee.[4] The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies.[5]
The FOIA at no point defines the phrase compelling public interest as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, two leading commentators on the FOIA, referring to this office's opinions on this issue, have offered the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the compelling public interest requirement.[6] *Page 5 
Professors Watkins and Peltz also note that the status of the employee or his rank within the bureaucratic hierarchy may be relevant in determining whether a compelling public interest exists.[7]
With respect to allegations of police misconduct, I have previously noted as follows:
 I and my predecessors have previously stated . . . on this general topic that a compelling public interest likely exists in information reflecting a violation of departmental rules by a cop on the beat in his interactions with the public. See Op. Att'y Gen. 2006-106. If the prior disciplinary records reflect a suspension based on this type of infraction, a strong case for the finding of a compelling public interest exists.[8]
However, the existence of a compelling public interest in disclosure will necessarily depend upon all of the surrounding facts and circumstances.
As noted above, the documents you have provided contain four reports of incidents involving employees of the Sheriff's office that resulted in suspensions ranging from one day to two days. Given that the most recent of these incidents occurred in 2009, I will assume that there has been a final administrative resolution of the suspension in each case. *Page 6 
As regards the nature of the infractions involved, none, based upon the limited information before me, appears to reflect a degree of misconduct sufficient to generate a compelling public interest in disclosure. Two of the four suspensions were imposed upon the same officer — a sergeant in the department, who was the highest ranking of the individuals who were suspended. With the exception of one incident of alleged misconduct by an underaged employee at a private party, none of the incidents appears to have involved an interaction between employees of the department and the general public. Although you report in your cover letter the settlement of a much publicized sexual harassment/retaliatory discharge lawsuit, none of the suspensions appears to have borne on the lawsuit, suggesting that the suspended employees were not the subject of a public controversy that might warrant disclosing the documents relating to the suspensions. Even though I recognize that an enhanced interest in disclosure exists in instances of police misconduct in interactions with the public, I question whether, under these particular circumstances, a compelling public interest in disclosure exists. Again, the infractions that led to the disciplinary suspensions were relatively minor, leading me to concur with the custodian that records related to these suspensions need not be disclosed.
Among the documents you have supplied are records relating to the dismissal in 2008 of a deputy who allegedly displayed salacious material to department employees and detainees. Although I consider this material subject to disclosure under the standard set forth above, the written request for disclosure does not mention, either directly or indirectly, the discharged individual. I consequently question whether records relating to this individual even fall within the scope of the request.
You further report that records exist pertaining to two individuals who were terminated by the sheriff following an investigation. These individuals were named in the written FOIA request you have attached to your submission. However, you have provided me no records relating to these individuals' dismissal. These individuals were apparently the named plaintiffs in the highly publicized lawsuit you reference in your request. Finally, you report that [a]s part of the Settlement Agreement of the lawsuit, the terminations have been changed to reflect resignations rather than discharge.
Not having seen the records relating to these individuals, I am unable to apply the test set forth above. The custodian will personally need to undertake this review. *Page 7 
With respect to the discharge/resignation distinction, I will merely echo the following summary of the law set forth by one of my predecessors:
 As explained above regarding the exemption for employee evaluation or job performance records, suspension or termination is a triggering event for the release of such records under A.C.A. § 25-19-105(c)(1). Accordingly, an employee's resignation ordinarily will not meet the first prong of the test under this Code section. This office has therefore on numerous occasions stated that a voluntary resignation in the face of a disciplinary challenge does not equate to a suspension or termination. See, e.g., Op. Att'y Gen. Nos. 2007-061, 2006-038, 2006-035, 2005-094, 2005-032, 2005-030, 2004-219, 2002-235, 2001-246, 98-188, and 97-063. On the other hand, other previous opinions of this office leave open the possibility that a coerced resignation might amount to a constructive termination. One of my predecessors has acknowledged that under certain facts, a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1). Op. Att'y Gen. 1997-063, citing Dobbins v. Everett, 2 Ark. App. 254, 620 S.W.2d 309 (1981) (employee, who, faced with certain termination, took less severe, embarrassing and traumatic option of resignation rather than discharge, did not quit voluntarily and without good cause for purposes of employment compensation decision).
 . . . As I have stated above, I am not a fact-finder in the issuance of Attorney General's opinions, and as a consequence, cannot determine whether any particular former employee who resigned was actually terminated for purposes of the A.C.A. § 25-19-105(c)(1). I have previously stated that only the custodian of records can make the threshold determination of whether a resignation constitutes a constructive termination. Op. Att'y Gen. 2007-061 at 5.[9]
I will add to this fully correct statement of the law only the observation that a court-approved agreement that what had been characterized as a discharge should *Page 8 
have been characterized as a resignation should be accorded substantial deference in determining whether records related to these individuals' departure from employment are subject to disclosure. Having not been provided a copy of the settlement agreement, I simply cannot, under these circumstances, affirm or reject the custodian's apparent decision to withhold the documents from disclosure. I can do no more than point out that the custodian, based upon his or her knowledge of all attendant circumstances, must categorize the documents under the above guidelines and apply the appropriate standard of review. I should further point out that the custodian might conclude that these records do not even fall within the scope of the documents requested.
I will address the custodian's apparent decision to withhold from disclosure two payroll reports that you have attached to your request. Both reports address a particular employee's attendance at work during portions of February and March 2009. I cannot determine why you have attached these reports, given that they do not seem responsive to any of the items set forth in the FOIA request to the Washington County Sheriff's Office. I will nevertheless set forth the standard for disclosing such information when it has been properly requested.
Under the FOIA, personnel records are open to public inspection and copying except to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy.[10] The FOIA does not define the term personnel records. Whether a particular record constitutes a personnel record, within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that personnel records are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants.[11]
The FOIA likewise does not define the phrase clearly unwarranted invasion of personal privacy. However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a clearly unwarranted invasion of personal privacy, the court applies a balancing test, weighing the *Page 9 
interest of the public in accessing the records against the individual's interest in keeping the records private.[12] If the public's interest outweighs the individual's interest, the release of the records will not constitute a clearly unwarranted invasion of personal privacy. If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial.[13] As the court noted in Young:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain warranted privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.[14]
However, as the court noted in Stilley, when there is little relevant public interest in disclosure, it is sufficient under the circumstances to observe that the employee's privacy interest in nondisclosure is not insubstantial.[15] Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his privacy interests outweighed that of the public's under the circumstances presented.[16] The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis.[17] The test is an objective one.[18] The question of whether the release of any particular personnel record would *Page 10 
constitute a clearly unwarranted invasion of personal privacy is always a question of fact to be determined by the custodian of records.[19]
In the present case, I see no particular reason that the custodian should not honor a request for release of the attendance information described above. Upon my review of the documents, I find nothing that would suggest that the employee in question has any interest in nondisclosure of the information. Having offered this conclusion, I must nevertheless note again that these documents do not appear to be responsive to the written FOIA request — a fact that the custodian may reasonably conclude militates against their production for review.
My analysis is more complicated regarding the employee grievance form attached to your submission, the accompanying letter expounding on the grievance, and the memorandum withdrawing the grievance. You have not indicated why you have attached these records to your request and whether the custodian has reviewed them as employee evaluation/job performance records or personnel records. Among other things, it is unclear whether these documents were generated at the behest of the employer for the purpose of evaluating the employee.[20] It is further unclear whether these documents formed a basis for the employee's suspension. It is consequently far from certain that these documents would be subject to review under the standard applicable to employee-evaluation/job performance records. Depending upon the attendant circumstances, the records might alternatively constitute personnel records, in which case the different standard of review discussed above would apply. Under these circumstances, I simply cannot affirm or reject the custodian's apparent decision to withhold the documents from disclosure. I can do no more than point out that the custodian, based upon his or her knowledge of all attendant circumstances, must categorize the documents under the above guidelines and apply the appropriate standard of review. I should *Page 11 
further point out that the custodian might conclude that these records do not even fall within the scope of the documents requested.
The custodian should further be aware that any party who is identifiable from any of the requested records may further be individually subject to the statutory protections discussed above. The custodian will need to determine whether such is the case. Any such party may further have a constitutionally protected privacy interest in those records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information.[21] The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
The question of whether information is protectable under the constitutional right of privacy is one of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge court), the custodian must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their nondisclosure. As always, the person claiming the right will have the burden of establishing it.[22]
In addition to the exemptions discussed above, various types of information are subject to possible redaction prior to disclosure of a record. Among these are medical records[23]; portions of records listing the home addresses of nonelected municipal employees[24]; all or portions of records disclosing [t]he identities of law enforcement officers currently working undercover with their agencies and *Page 12 
identified in the Arkansas Minimum Standards Office as undercover officers[25]; portions of records revealing social security numbers[26]; and portions of records disclosing driver's license numbers.[27] The custodian will need to determine which, if any, of these exemptions apply.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
[1] A.C.A. § 25-19-105(c)(3) (Supp. 2009).
[2] A.C.A. § 25-19-103(5)(A) (Supp. 2009).
[3] See, e.g., Ark. Ops. Att'y Gen. Nos. 2009-210; 2009-067; 2008-004; 2007-225; 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055.
[4] See, e.g., Ark. Op. Att'y Gen. No. 2008-004; 2006-038; 2004-012.
[5] See J. Watkins R. Peltz, The Arkansas Freedom ofInformation Act (5th ed., Arkansas Law Press 2009), at 204.
[6] Id. at 217-18 (footnotes omitted).
[7] Id. at 216 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.)
[8] Op. Att'y Gen. No. 2009-067. With respect to records generated in the course of an internal affairs investigation, one of my predecessors noted the following in Ark. Op. Att'y Gen. No. 2007-025:
 My predecessors have consistently opined that records in an internal affairs file that have been generated at the behest of an employer in the course of investigating a complaint against an employee constitute `employee evaluation/job performance records' within the meaning of the FOIA. See
Ops. Att'y Gen. 2006-106; 2005-267; 2005-094; 2004-178; 2003-306; and 2001-063. It has been opined, however, that [d]ocuments not created in the evaluation process do not come within the rationale behind the 25-19-105(c)(1) exemption. See Op. Att'y Gen. 2007-025; 2005-267, citing Op. Att'y Gen. 2005-094.
[9] Op. Att'y Gen. No. 2008-044.
[10] A.C.A. § 25-19-105(b)(12) (Supp. 2009).
[11] See, e.g., Op. Att'y Gen. No. 1999-147.
[12] See Young v. Rice,308 Ark. 593, 826 S.W.2d 252 (1992).
[13] Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998).
[14] 308 Ark. at 598.
[15] 332 Ark. at 312.
[16] Id. at 313.
[17] See Ark. Ops. Att'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055.
[18] See, e.g., Ark. Op. Att'y Gen. Nos. 96-133.
[19] Ops. Att'y Gen. Nos. 2008-025; 2004-260; 2003-336; 2003-201; 2001-101; 98-001.
[20] In this regard, I will note that the employee reports having counseled with department officials regarding the precise procedure to be followed in pursuing the grievance in connection with the proposed suspension. Furthermore, the employee reportedly filed the grievance after the suspension had issued, apparently prompting the department to amend the original letter of counseling at the suspended employee's request. The question arises, then, whether these documents might be characterized as having been generated in the course of an administrative appeal.
[21] See McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989).
[22] Accord, Ark. Ops. Att'y Gen. Nos. 2007-001; 2006-141 and 2001-122.
[23] A.C.A. § 25-19-105(b)(2).
[24] A.C.A. § 25-19-105(b)(12).
[25] A.C.A. § 25-19-105(b)(10)(A) (see Ark. Ops. Att'y Gen. Nos. 2005-068 (stressing that the exemption applies only to officers currently working undercover); 2002-087 (opining that it would be inappropriate to release the names of undercover police officers); compare Ark. Ops. Att'y Gen. Nos. 2007-213; 98-130; 98-101; 97-286; 96-005 and 90-131 (all opining that while the identity of public employees is ordinarily a matter of significant public interest, it would be inappropriate to release photographs even of officers who have recently served as undercover operatives).
[26] 5 U.S.C. § 552a (the Federal Privacy Act).
[27] 18 U.S.C. § 2721 (the Driver' License Privacy Protection Act).See Ark. Ops. Att'y Gen. Nos. 2008-046; 2006-035; 2003-153; 93-300; and 91-003. *Page 1